In re Nadra L. THOMPSON, Debtor.

No. 06–31642.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Aug. 9, 2007.

## DECISION OVERRULING DEBTOR'S OBJECTION TO ALLOWANCE OF CLAIM

LAWRENCE S. WALTER, Bankruptcy Judge.

This matter is before the court on the Debtor's Amended Objection to Allowance of Claim of AMC Mortgage Services [Doc. 25] and the Response and Memorandum filed by AMC Mortgage Services [Doc. 29 and 36]. Following a status conference, the parties submitted supplemental briefs in support of their positions [Docs. 41 and 42].

### *FACTUAL BACKGROUND*

The Debtor, Nadra L. Thompson ("Debtor") filed her Chapter 13 bankruptcy petition on June 26, 2006. At the time of filing, the Debtor had a first mortgage on her residential property at 326 West Euclid Avenue in Springfield, Ohio held by AMC Mortgage Services, Inc. ("AMC"), the loan servicer for Argent Mortgage Company, LLC. On October 17, 2006, AMC filed an amended proof of claim in the Debtor's bankruptcy case showing an amount due of $68,313.10. [Doc. 29, Ex. A.] AMC asserted that the full amount of the claim was secured including an arrearage of $9,006.77. [*Id.*] AMC further itemized the arrearage as follows:

| | |
|---|---|
| Ten (10) pre-petition payments of $481.26 each: | $4,812.60 |
| Previously accrued late charges: | $ 263.72 |
| Advances for insurance: | $ 931.30 |
| Property inspections: | $ 100.00 |
| Foreclosure costs: | $1,743.00 |
| Appraisal: | $ 325.00 |
| BPO costs: | $ 95.00 |
| Property tax advance: | $1,113.28 |
| (Suspense balance): | ($ 377.13) |
| **Total Arrearage:** | **$9,006.77** |

[*Id.*]

On December 4, 2006, the Debtor filed an amended objection to the allowance of AMC's claim. The Debtor objected to AMC's characterization of its claim as fully

David M. Hollingsworth, Enon, OH, for Debtor.

Christopher P. Kennedy, Cleveland, OH, for AMC Mortgage Services Inc.

secured noting that her residential property had been appraised at only $32,000.00, far less than AMC's claim of $68,313.10. Also, while the Debtor admitted that she must pay a portion of the arrearage to cure the default, she questioned the appropriateness of certain itemized advances and costs included in the arrearage. Specifically, the Debtor acknowledged owing the $4,812.60 in pre-petition mortgage payments as well as the $263.72 in accrued late charges less the $377.13 suspense balance for a total arrearage claim of $4,699.19. However, the Debtor objected to the remaining $4,307.58 consisting of itemized amounts for advances in insurance, property inspections, foreclosure costs, appraisal costs, BPO costs and property tax advances.[1] According to the Debtor, AMC is an undersecured creditor pursuant to 11 U.S.C. § 506(b) and, as a consequence, these advances and costs may be allowed only as an unsecured claim and are not a valid part of the default or arrearage to be cured by the Debtor in full.

AMC disagreed with the Debtor, arguing that 11 U.S.C. § 1322(e) allows the mortgage holder to include these advances and costs as part of its arrearage claim that the Debtor must cure, even if the mortgage holder is undersecured, as long as they were made a part of the parties' contract and are allowed under applicable state law. AMC directed the court to provisions in the parties' Fixed Rate Note and Mortgage allowing AMC to recover such advances and costs upon a default. [Doc. 29, Exs. B and C.] The Debtor did not dispute AMC's interpretation of the parties' contract nor did the Debtor dispute that the advances and costs are allowed under Ohio law. Instead, the parties focused their dispute on which Bankruptcy Code provision, 11

U.S.C. § 506(b) or § 1322(e), controls whether an undersecured mortgage holder may include pre-petition advances and costs as part of its arrearage claim.

## LEGAL ANALYSIS

■ In bankruptcy, determining whether a creditor can add pre-petition interest, costs, and fees to its secured claim is generally determined by 11 U.S.C. § 506(b) which states:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). Under this section of the Bankruptcy Code, a secured claim may include interest, reasonable fees, and costs related to a default only if the creditor is "oversecured" which means that the value of the collateral is greater than the value of the creditor's claim. In this case, because AMC is an undersecured creditor with more owed by the Debtor than the value of the residential property constituting the collateral, AMC would not qualify for adding the $4,307.58 in advances and costs to its arrearage claim pursuant to § 506(b).

■ However, the fact that a creditor is undersecured may not necessarily disqualify it from adding interest, costs, and fees to its arrearage claim in a Chapter 13 case. When a debtor seeks to cure a prepetition default or arrearage on a long-term debt over the life of a Chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(5), the amount of

---

**1.** AMC's proof of claim does not include an amount for pre-petition attorney fees.

the arrearage that must be cured is determined by § 1322(e).[2] This section states:

> (e) Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e).[3] Pursuant to this provision, for a creditor to include any form of interest, costs, or fees as a mandated component of the cure amount through a Chapter 13 plan, the items must be: 1) required to cure the default under the parties' original contract or agreement; and 2) be allowable pursuant to applicable state or other nonbankruptcy law. 11 U.S.C. § 1322(e); *In re Tudor*, 342 B.R. 540, 551 (Bankr.S.D.Ohio 2005); *In re Plant*, 288 B.R. 635, 642 (Bankr.D.Mass. 2003).

In this case, the Debtor does not contest that the $4,307.58 in advances and costs are, in fact, a required component of curing a default under the original note and mortgage with AMC. Nor, for that matter, does the Debtor dispute that these types of charges are allowable under applicable Ohio law. Instead, the Debtor argues that a creditor must meet the requirement of being oversecured pursuant to § 506(b) before it can add advances and costs to its arrearage claim under § 1322(e). AMC disagrees with the Debtor's interpretation

arguing that § 1322(e) supersedes § 506(b) in a Chapter 13 cure situation.

As framed by the parties, the question before the court is whether § 1322(e) trumps § 506(b) in a Chapter 13 cure situation so that even an undersecured creditor may add interest, costs, and fees to its arrearage claim if that creditor otherwise meets the requirements of § 1322(e). For the reasons stated below, the court concludes that the plain language of § 1322(e) clarifies that it does in fact supersede § 506(b) allowing both over and undersecured creditors to add interest, costs, and fees to their arrearage claim pursuant to § 1322(e).

The basis for the court's determination that § 1322(e) trumps § 506(b) in a Chapter 13 cure situation is the plain language of § 1322(e) itself. This provision governing the amount necessary to cure an arrearage or default in a Chapter 13 case, begins with the language *"Notwithstanding ... sections 506(b) and 1325(a) ... the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."* 11 U.S.C. § 1322(e) (italics added). The term "notwithstanding" is defined as "without prevention or obstruction from or by" or "in spite of." *Webster's Third New International Dictionary* 1545 (1981). By using the term "notwithstanding" in § 1322(e), Congress clarifies that § 506(b) has no applicability in a Chapter 13 cure situation. Indeed, the majority of courts analyzing the issue

---

**2.** AMC makes an alternative argument that the anti-modification language of § 1322(b)(2), prohibiting a debtor from modifying the rights of a secured claim holder when the claim is secured only by the debtor's principal residence, prevents the debtor from modifying AMC's arrearage claim. However, § 1322(b)(2) and its anti-modification language does not apply to the curing of a default or arrearage. *See* 11 U.S.C. § 1322(b)(5) and § 1322(e).

**3.** Bankruptcy Code Section 1322(e) applies only to agreements entered into on or after October 22, 1994. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702(b)(2)(D), 108 Stat. 4106 (1994). The note and mortgage agreement between the Debtor and AMC were executed after the effective date so § 1322(e) applies in this case.

agree that § 1322(e) supersedes § 506(b) with respect to determining the amount necessary to cure a default or arrearage in a Chapter 13 plan. *See Smiriglio v. Hudson United Bank,* 98 Fed.Appx. 914, 915–16, 2004 WL 1059831, at *2 (3rd Cir. May 11, 2004); *Key Bank of New York v. Harko (In re Harko),* 211 B.R. 116, 122 (2nd Cir. BAP 1997) (stating that the introductory language of § 1322(e) makes clear that § 506(b) and § 1325(a)(5) have no applicability in a cure situation); *Tudor,* 342 B.R. at 567–68; *In re Taylor,* 2003 WL 22282173, at *3 (Bankr.D.Vt. Oct.1, 2003); *In re Hatala,* 295 B.R. 62, 69 (Bankr. D.N.J.2003); *Plant,* 288 B.R. at 641–42. For this reason, a creditor meeting § 1322(e) requirements may add interest, fees, and costs to its arrearage claim regardless of whether a particular claim is oversecured or undersecured. *Plant,* 288 B.R. at 642. *See also* Keith M. Lundin, Chapter 13 Bankruptcy, 3d Ed. § 135.1 (2000 & Supp.2004) (noting that when a debtor proposes to cure a default, § 1322(e) not only changes the rights of oversecured creditors but also the rights of undersecured creditors).

Nonetheless, there is a minority position in the case law holding that the language of § 1322(e), in light of its purpose, is ambiguous in its application to undersecured creditors. This position is represented by *In re Evans,* 336 B.R. 749 (Bankr.S.D.Ohio 2006), a similar case from an Ohio bankruptcy court dealing with an undersecured creditor attempting to include attorney fees, costs and charges in its mortgage arrearage claim. In *Evans,* the court concluded that the use of the term "notwithstanding" in § 1322(e) was vague and could lead to more than one logical meaning. 336 B.R. at 753–54. Specifically, the court concluded that "notwithstanding" could mean that § 506(b) has no applicability in a Chapter 13 cure situation or, instead, the use of the term could mean that a creditor must meet § 1322(e)'s requirements in spite of already meeting the requirements of being oversecured pursuant to § 506(b). *Id.* at 754.

Because of this seeming ambiguity, the *Evans* court considered § 1322(e)'s meaning in light of the legislative history behind its enactment as part of the 1994 Bankruptcy Reform Act. Section 1322(e) was enacted to overrule the Supreme Court's decision in *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) and its holding that the Bankruptcy Code required interest to be paid on mortgage arrearages. *Evans,* 336 B.R. at 754 (citing H.R.Rep. No. 103–835 at 55 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3364). Congress believed that *Rake* provided a windfall to secured creditors at the expense of unsecured creditors by forcing debtors to pay the bulk of their income to satisfy the secured creditors' claims. *Id.* This had the effect of giving secured creditors interest on interest payments and interest on other fees even when prohibited by applicable state law or the items were something not contemplated by the parties in the original agreement. *Id.* Therefore, Congress enacted § 1322(e) to limit secured creditors to the benefit of the parties' bargain and put debtors in the same position as if the default had not occurred. *Id.*

Based on this legislative history, the *Evans* court determined that § 1322(e) was intended to add an additional requirement for an oversecured creditor seeking to receive interest on interest, namely that the interest had to be part of the parties' agreement and allowable under state law. *Id.* at 755. Consequently, the court concluded that "the purpose of § 1322(e) was not to supplant but to supplement the requirements of § 506(b)." *Id.* Thus, the court in *Evans* held that only oversecured creditors first meeting the requirements of

§ 506(b) were entitled to add interest, costs, and fees to their arrearage claims under § 1322(e). *Id.*

While the conclusion reached in *Evans* is understandable and appropriate based on that court's analysis of § 1322(e)'s legislative history, this court respectfully finds that interpretation to be in conflict with the plain language of the statute. To arrive at the *Evans* court's interpretation, additional terms must be implied into the language of § 1322(e) such as "[n]otwithstanding ... *that a creditor has met the requirements of* § 506(b)." 11 U.S.C. § 1322(e) (italicized words added). That implied language is simply not part of the statute. Instead, the statute reads, "[n]otwithstanding ... § 506(b)" meaning that despite § 506(b)'s provisions, § 1322(e) governs the amount necessary to cure a default in a Chapter 13 plan. As previously noted, this plain meaning view of § 1322(e)'s language is supported by the majority of courts interpreting the statute including several bankruptcy courts in Ohio which, while not addressing the specific issue of § 1322(e)'s applicability to undersecured creditors, have noted that its plain language has broader application than the original intent of the legislature in overruling *Rake*.[4] *See Tudor,* 342 B.R. at 567 (recognizing that while § 1322(e) was enacted to overrule *Rake*, its language and application are not limited to the interest component of an arrearage claim; the statute extends to attorney fees and other costs as well); *In re Landrum,* 267 B.R. 577, 581 (Bankr.S.D.Ohio 2001) (noting that while § 1322(e) was intended to overrule *Rake*, "Congress did not go so far as to say that § 1322(e) was intended to accomplish this purpose alone"); *In re Lake,* 245 B.R. 282, 285 (Bankr.N.D.Ohio 2000).

When the language of a statute is clear, there is generally no reason to search behind its words for a contrary intent. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000) (noting that when the language is plain and absurd results are not produced, the sole function of the courts is to enforce the statute according to its terms); *American Tobacco Co. v. Patterson,* 456 U.S. 63, 75, 102 S.Ct. 1534, 1540, 71 L.Ed.2d 748 (1982). In this case, the court finds no reason to look behind the plain language of 11 U.S.C. § 1322(e) which makes clear that 11 U.S.C. § 506(b) has no application in a Chapter 13 cure situation. Therefore, the court holds that an undersecured creditor may add interest, costs, and fees to its arrearage claim as long as those items otherwise meet the requirements of § 1322(e). Consequently, the Debtor's objection to $4,307.58 of itemized amounts in

---

4. The *Evans* court raises the concern that if a broader interpretation of § 1322(e) is adopted, fees, such as attorney fees, may be added to an arrearage claim without the usual requirement that the fees be reasonable. *See Evans,* 336 B.R. at 753. However, to add any fees or costs to an arrearage claim, those fees or costs must still meet § 1322(e)'s mandate that the items be required under the parties' contract and allowable under state law. State laws often forbid the payment of attorney fees in certain types of contracts or require them to be reasonable before they are awarded. Keith M. Lundin, Chapter 13 Bankruptcy, 3d Ed. § 135.1 (2000 & Supp. 2004) (noting that when state law declares contract provisions for attorney fees unenforceable, they will not be recoverable in a Chapter 13 case controlled by § 1322(e); furthermore, when state law imposes a reasonableness requirement on attorney fees or other charges, that limitation will be enforced in a § 1322(e) cure situation). In other words, when a debtor chooses to cure a default pursuant to § 1322(e), the language of the statute does nothing more than give the creditor the benefit of its bargain to the same extent as it would have outside of the context of a bankruptcy filing.

AMC's arrearage claim for advances and costs is overruled.

**IT IS SO ORDERED.**