**In re Teresita R. PEPPERS, Debtor.**

**No. 06–12976.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Nov. 18, 2008.

David A. Kruer, G. Timothy Dearfield, Nicholas A. Zingarelli, Dearfield, Kruer & Company, LLC, Cincinnati, OH, for Debtor.

### ORDER OVERRULING OBJECTION TO CLAIM

JEFFERY P. HOPKINS, Bankruptcy Judge.

Before the Court is an Objection To Proof Of Claim ("Objection") (Doc. 37) filed by the Debtor. The Objection contests the arrearage claim of U.S. Bank ("USB"). The Debtor believes that a portion of the claim should be paid as an unsecured claim pursuant to 11 U.S.C.

§ 506(a). USB believes its claim should be paid in full.

## FACTS

USB holds a first mortgage on the Debtor's residence. The value of the residence is $71,000. See Doc. 19. USB filed a proof of claim asserting a secured claim for a $19,087.12 arrearage. See Claim No. 2–2. The arrearage is comprised of unpaid principal, interest and escrow; foreclosure costs and expenses; and a property inspection fee. The claim reflects a principal balance of $66,821.17 on the date of the petition.

Pursuant to § 506(a), the Debtor argues that USB holds a secured claim in the amount of $4,178.83 [1] and an unsecured claim for the balance of the arrearage. Consequently, the Debtor objects to full payment of the USB arrearage. The Debtor believes that the unsecured claim, with the exception of any interest component [2], should be paid a 1% dividend consistent with the treatment of unsecured creditors under her confirmed plan. See Doc. 27.

## OVERVIEW OF STATUTORY SEQUENCE

Generally, a debtor cannot modify the rights of a mortgagee with a secured claim that is "secured only by a security interest in real property that is the debtor's principal residence." See 11 U.S.C. § 1322(b)(2); Nobelman v. American Savs. Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). An exception to this rule is 11 U.S.C. § 1322(b)(5). See Nobelman, 508 U.S. at 330, 113 S.Ct. 2106. Section 1322(b)(5) provides:

notwithstanding paragraph (2) of this subsection, [the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

If a debtor chooses to force a § 1322(b)(5) cure upon a mortgagee that is protected by § 1322(b)(2), the cure is governed by 11 U.S.C. § 1322(e), which provides in relevant part:

if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

## ISSUE

The issue presented is whether a debtor must pay the entire § 1322(e) amount or whether the mortgagee is simply entitled to an allowed claim in this amount that is subject to modification under § 506(a).

## ANALYSIS

The Debtor believes that the amount owed to USB under § 1322(e) is subject to bifurcation under § 506(a). The Debtor's position is inconsistent with the statutory sequence established by Nobelman.

In Nobelman, the debtors' chapter 13 plan proposed to bifurcate the undersecured principal balance into a secured claim and an unsecured claim.[3] The plan proposed to pay nothing on the unsecured claim, consistent with the treatment of

---

1. $71,000 (property value) less $66,821.17 (principal balance).

2. The Debtor believes that Nobelman v. American Savs. Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) requires her to pay the principal and interest component of the arrearage in full, regardless of § 506(a).

3. Unlike this case, the Nobelman debtors proposed to pay all arrears in full, even to the extent the arrears exceeded the value of the property.

unsecured creditors under the plan. The Supreme Court held that this violated § 1322(b)(2).

■ Relevant to this case, the Supreme Court noted that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *See Nobelman,* 508 U.S. at 328, 113 S.Ct. 2106. In fact, § 506(a) is the first step to determine whether a mortgagee is the holder of a secured claim, and thus protected by § 1322(e). *Id.* at 329, 113 S.Ct. 2106 (determining that mortgagee was the holder of a secured claim after applying the debtors' valuation under § 506(a)). If, after applying § 506(a), it is determined that the mortgagee is the holder of a secured claim (regardless of whether fully secured), then the mortgagee's rights cannot be modified except as expressly provided in § 1322(b)(5). *Id.* at 330, 113 S.Ct. 2106.

*Nobelman* sets forth a statutory sequence concerning the claims of mortgagees seeking protection under § 1322(b)(2). First, determine under § 506(a) whether the mortgagee possesses a secured claim.[4] If so, then the only modification permitted by the Code is the cure of a default under § 1322(b)(5). Section 1322(b)(5) does not dictate the terms of the cure, it merely establishes the right. *See Rake v. Wade,* 508 U.S. 464, 471, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) ("nothing in [§ 1322(b)(5)] dictates the terms of the cure"). However, Congress added § 1322(e) in response to *Rake v. Wade. See In re Lopez,* 372 B.R. 40, 48 (9th Cir. BAP 2007). Section 1322(e) now dictates the terms of the cure. *See In re Thompson,* 372 B.R. 860, 862–63 (Bankr.S.D.Ohio 2007) (Walter, J.) ("the amount of the arrearage that must be cured is determined by § 1322(e)"); *In re Tudor,* 342 B.R. 540, 566 (Bankr.S.D.Ohio 2005) (Hoffman, J.) (" § 1322(e) of the Bankruptcy Code defines the allowable components of a claim to cure a mortgage default under Chapter 13").

Consequently, § 506(a) is relevant only to the initial determination of whether the mortgagee is protected by § 1322(b)(2). Thereafter, § 506(a) is inapplicable to the cure of an arrearage under § 1322(b)(5) and § 1322(e). Instead, the express terms of § 1322(e) govern the cure.

The Debtor attempts to bootstrap § 506(a) into § 1322(e) when the latter does not provide for the same. Given that *Nobelman* was decided prior to *Rake v. Wade,* it must be presumed that Congress was aware of the statutory sequence established by *Nobelman* when it codified § 1322(e). *See South Dakota v. Yankton Sioux Tribe,* 522 U.S. 329, 351, 118 S.Ct. 789, 139 L.Ed.2d 773 (1998) ("we assume that Congress is aware of existing law when it passes legislation"). Consequently, this Court will not assume that Congress intended § 506(a) to be applied under § 1322(e) unless expressly stated.

The Court's reading of § 1322(e) is also consistent with a second aspect of *Nobelman,* wherein the Supreme Court states that the mortgagee's non-modifiable rights are governed by the agreement of the parties and applicable state law. See *Nobelman,* 508 U.S. at 329, 113 S.Ct. 2106

---

4. The Sixth Circuit has confirmed this first step.

At the court-of-appeals stage of the Nobelman litigation, the Fifth Circuit had ruled in favor of the bank under the theory that, on the facts presented, § 1322(b)(2) rendered § 506(a) a nullity. See *In re Nobelman,* 968 F.2d 483, 489 (5th Cir.1992).

The Supreme Court rejected that theory—and in so doing, as the Fifth Circuit subsequently observed, the Supreme Court "confirmed that § 506(a) is the starting point in the analysis." *In re Bartee,* 212 F.3d 277, 286 (5th Cir.2000).

*In re Lane,* 280 F.3d 663, 667 (6th Cir.2002).

("The bank's 'rights,' therefore, are reflected in the relevant mortgage instruments, which are enforceable under Texas law."). This is precisely what the plain language of § 1322(e) provides.

### DISCHARGE

■ The Debtor also asked the Court to determine whether the cure of the USB arrearage was governed by § 1322(b)(5) or 11 U.S.C. § 1322(b)(3). The Debtor argues that the latter section governs the cure. She wants § 1322(b)(3) to govern the cure so that, upon cram down, the unpaid balance would be discharged under 11 U.S.C. § 1328(a). If § 1322(b)(5) controls, any unpaid portion of the cure is excepted from discharge pursuant to § 1328(a)(1). Given the Court's holding that the Debtor cannot cram down any portion of USB's arrearage, this issue may be moot. Nonetheless, *Nobelman* makes it clear that the cure is effectuated by means of § 1322(b)(5), not § 1322(b)(3). *See Nobelman,* 508 U.S. at 330, 113 S.Ct. 2106.

### CONCLUSION

For the foregoing reasons, the Objection is **OVERRULED.**[5]

---

**5.** At the hearing on the Objection, the parties agreed to limit their arguments to the issues contained in this decision. If the Debtor still wishes to litigate additional issues, this order does not prejudice her from renewing her objection as to any additional issues raised therein.