**In re Charles William THOMPSON,
Linda Joyce Thompson,
Debtors.**

No. 08–34422.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Dec. 14, 2009.

Richard E. West, Springboro, OH, for Debtors.

Scott P. Ciupak, Hudson, OH, for HSBC Mortgage Services Inc.

Jeffrey M. Kellner, (Chapter 13 Trustee), Scott G. Stout, (Staff Attorney for the Chapter 13 Office), Dayton, OH.

---

1. Unless otherwise noted, all statutory references are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. §§ 101–1532 (the "Code"), cited in this decision as " § ____".

## Decision Denying Debtors' Objection to Claim of HSBC Mortgage Services

GUY R. HUMPHREY, Bankruptcy Judge.

### I. Introduction

The sole issue before the court is whether the costs of a title insurance premium incurred by a mortgagee related to a pre-petition state foreclosure action may be included as part of the mortgagee's allowed claim in the mortgagor's subsequent bankruptcy case. The court finds that the $171.00 title insurance premium may be included as part of the mortgagee's arrearage claim to be cured pursuant to 11 U.S.C. § 1322(e).

### II. Background

#### A. *Procedural Background and Facts*

The facts relevant are included in the *Joint Stipulation of Facts* (Doc. 56) ("*Stipulation*") and in the court's docket. The Debtors, Charles William Thompson and Linda Joyce Thompson ("Debtors"), filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code ("Bankruptcy Code" or the "Code")[1] on September 8, 2008. On October 9, 2008 HSBC Mortgage Services, Inc. ("HSBC") filed a proof of claim in the Debtors' case (Doc. 56, Exh. D). This matter is before the court upon the *Debtors' Objection to Claim of HSBC Mortgage Services* (Doc. 34), HSBC's *Response to Debtors' Objection to Proof of Claim* (Doc. 37), the parties' respective supplemental briefs (Docs. 57 & 58), and the *Stipulation*.

The Debtors own residential real property located at 59 Soloman Street, Trotwood, Montgomery County, Ohio ("Property"). The Property is subject to a first mortgage held by HSBC ("Mortgage") given by the Debtors to secure a note in the principal amount of $62,370 ("Note").[2]

---

2. The Note and the Mortgage were initially held by JRMK Co., Inc., d/b/a/ Alternative Financial.

At the time of the filing of the Debtors' bankruptcy petition, the Property was subject to a foreclosure action initiated by HSBC in the Montgomery County, Ohio Court of Common Pleas Court (Case 2008CV04656). The Local Rules for this court ("Montgomery County Local Rules") applied to the foreclosure action.

The proof of claim that HSBC filed on October 9, 2008 showed an amount due of $67,903.50. (Doc. 56, Exh. D). HSBC asserted that the full amount of its claim was secured, including an arrearage of $11,263.70. On December 18, 2008 the Debtors filed an objection to the allowance of HSBC's claim (Doc. 34). The Debtors objected to the amount of the arrearage asserted by HSBC and questioned the appropriateness of certain costs, including the foreclosure costs, on the basis of their lack of itemization. In its response, HSBC indicated that it would provide documentation to support the amount of the arrearage and would file an amended proof of claim to remove any charges that it could not document (Doc. 37). On March 6, 2009 HSBC filed an amended proof of claim and on March 26, 2009 HSBC filed a second amended proof of claim (Doc. 56, Exhs. E & F) for the purpose of itemizing certain costs and fees incorporated in the prepetition arrearage, including foreclosure costs, namely a preliminary title report fee of $496 for services performed on May 19, 2008 and a final title report fee of $150 for services performed on June 4, 2008. The $496 "Preliminary Title Report" charge included: $171 for a "premium" (the "title insurance premium"), $275 for a "Title Exam," and $50 for "Copies." *Stipulation,* Exhs. F and G.

HSBC's filing of the amended proofs of claim settled the Debtors' objection with one exception. The parties disputed whether the $171 charge for the title insurance premium associated with the May 19, 2008 preliminary title report was prop-erly included in HSBC's pre-petition arrearage claim. *See Joint Status Report Following Trustee's Rule 7016 Conference* (Doc. 49). Pursuant to a briefing schedule, HSBC and the Debtors each filed a brief in support of their position on this issue (Docs. 57 & 58).

### B. *Positions of the Parties*

As noted above, the sole issue raised by the Debtors is whether the title insurance premium was appropriate. The Debtors do not dispute the reasonableness of the amount of the title insurance premium, nor the appropriateness of the charges for the preliminary and final title examinations conducted in connection with the foreclosure action. However, they contend that the title insurance premium should not be allowed as part of the arrearage under § 1322(e) because the Montgomery County Local Rules do not require title insurance and it is unnecessary. HSBC argues that the title insurance premium should be allowed because it was part of the parties' original agreement and is allowed under applicable state law.

### III. Legal Analysis

#### A. *Jurisdiction*

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference in this District. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

#### B. *Analysis*

Resolution of the issue of whether HSBC has properly included the title insurance premium in its proof of claim requires an interpretation of § 1322(e) relating to the allowance of mortgagees' claims for prepetition arrearages in Chapter 13 cases. The court has found no case discussing this precise issue, nor did the parties cite to any such decision. According-

ly, the court's analysis will focus on the statute itself and case law interpreting the statute with respect to other expenses involving mortgage claims.

■■■ Section 1322(b)(3) allows for the curing of any default in a Chapter 13 plan and § 1322(e) provides the governing law as to curing prepetition mortgage loan defaults and states:

> (e) Notwithstanding section (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law.

11 U.S.C. § 1322(e). According to § 1322(e), that cure default amount is determined by: (1) the applicable note, mortgage, or other contractual documents, and (2) applicable nonbankruptcy law. 11 U.S.C. § 1322(e); *In re Tudor*, 342 B.R. 540, 551 (Bankr.S.D.Ohio 2005); *In re Thompson*, 372 B.R. 860, 863 (Bankr. S.D.Ohio 2007). Absent a prior state court determination, a bankruptcy court must place itself in the shoes of the state court judge and ascertain whether the fees and costs should be awarded under the applicable state law. *In re McMullen*, 273 B.R. 558, 561 (Bankr.C.D.Ill.2001).

The *Tudor* court described the panoply of translations of the § 1322(e) phrase "in accordance with the underlying agreement and applicable nonbankruptcy law," stating:

> Under § 1322(e) of the Code, "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e). *See Lake*, 245 B.R. at 285 ("The amount of the cure is determined by looking to two sources: (1) the existing agreement between the parties; and (2) applicable nonbankruptcy law, which

in this case is Ohio law. As a result, 'two conditions must be met before interest or other charges can be required as part of the bankruptcy cure. First, the interest or other charges must be required under the original agreement, and second, they cannot be prohibited by state law.' ")(quoting *In re Bumgarner*, 225 B.R. 327, 328 (Bankr.D.S.C. 1998)). *See also In re Koster*, 294 B.R. 737, 739–40 (Bankr.E.D.Mo.2003)("The analysis of Section 1322(e) is a two part process. First, as a threshold matter, the amount necessary to cure must be in accordance with the parties' agreement. Second, the amount sought to be included must not otherwise be forbidden by applicable, non-bankruptcy law. Section 1322(e) does not provide for the inclusion of an item in an arrearage claim that would be permitted under applicable non-bankruptcy law that was not included in the underlying agreement."); *In re Plant*, 288 B.R. 635, 642 (Bankr. D.Mass.2003); *Landrum*, 267 B.R. at 580 (same); *In re Hoover*, 254 B.R. 492, 496 (Bankr.N.D.Okla.2000)(holding that, although applicable non-bankruptcy law would allow interest on unpaid installment arrears, the parties' agreement did not provide for interest; and that because the agreement provided for interest on money advanced for insurance, and such interest was not otherwise prohibited by non-bankruptcy law, its allowance was permitted under § 1322(e)).

*Tudor*, 342 B.R. at 551. The court's analysis then must construe and apply the two components of this phrase.

1. Is Payment Of The Title Insurance Premium "In Accordance With The Underlying Agreement?"

■■■ The court must first determine whether the title insurance premium is "in accordance with the underlying agreement?" The Debtors do not directly address this issue, but HSBC references sev-

eral provisions of the Mortgage in support of its argument that the parties' agreement provides for the Debtors' payment of such premium.

HSBC notes that the Mortgage provides that if the borrower fails to perform under the terms of the Mortgage, HSBC "may do and pay for whatever is necessary to protect the value of the Property and [HSBC]'s rights in the Property . . ." and that any amounts disbursed in furtherance of HSBC's rights shall become "additional debt of Borrower secured by the [Mortgage]." Doc. 56 (Stipulation at Exh. B, ¶ 7). Paragraphs 21 and 22 of the Mortgage further detail HSBC's rights:

> 21. *Acceleration; Remedies* . . . . If the default is not cured . . . Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in the paragraph 21, including but not limited to, costs of title evidence.
> 23. *Advances to Protect Security.* This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

Mortgage, *Stipulation* at Exh. B. Thus, the Mortgage authorizes HSBC to recover its foreclosure costs, "including but not limited to, costs of title evidence[,]" in the event of a default under the Mortgage and a judicial foreclosure proceeding is pursued, both of which occurred in this case.

The Debtors do not dispute that title insurance is a common and acceptable form of title evidence in Ohio and, specifically, in Montgomery County, Ohio. Black's Law Dictionary defines "evidence of title" as "[t]he means by which the

ownership of land is satisfactorily demonstrated within a given jurisdiction . . ." and cites Robert Kratovil, *Real Estate Law* 170 (6th ed.1974) for the following proposition:

> There are four kinds of evidence of title: *abstract and opinion, certificate of title, title insurance and Torrens certificate.* The certificate of title is used extensively in the Eastern states, and some Southern states. In urban centers in a great many sections of the country, title insurance occupies a dominant position in real estate transactions. In farm areas the abstract and opinion method is common. To a great extent, the acceptability of a particular kind of evidence of title depends on the local custom.

Black's Law Dictionary, 9th ed. (2009). In addition, recently enacted Ohio Revised Code ("ORC") § 2329.191, discussed further below, recognizes title insurance as a form of title evidence in Ohio.

Since the Mortgage provides for the Debtors' payment of the costs of title evidence and title insurance is a recognized form of title evidence in Ohio, the court finds that the title insurance premium is "in accordance with the underlying agreement."

> 2. Is Payment of The Title Insurance Premium "In Accordance With Applicable Nonbankruptcy Law?"

Second, the court must address whether the title insurance premium is "in accordance with applicable nonbankruptcy law." Paragraph 15 of the Mortgage provides that the Mortgage is "governed by federal law and the law of the jurisdiction in which the Property is located." The Property is located in Ohio. Accordingly, the applicable nonbankruptcy law in this case is Ohio law.

Courts construing § 1322(e) have interpreted this second element as requiring that the fee not be "prohibited" or "forbidden" by applicable state law. The Debtors do not cite direct authority for the proposi-

tion that Ohio law prohibits mortgagees from collecting title insurance premiums in foreclosure actions from mortgagors who have defaulted on their loans, nor does HSBC cite direct authority in support of recovery of such fees.

The bankruptcy courts in this district have repeatedly held that, in general, a mortgagee's prepetition foreclosure costs are recoverable as part of its arrearage claim under § 1322(e). In addition, the costs of title work are routinely approved as part of that claim. For example, in *Tudor* the court stated:

> ... the Debtor has not cited—nor has the Court's independent research revealed—any authority for the proposition that a mortgagee's recovery of foreclosure costs is prohibited under Ohio law. In fact, the bankruptcy courts that have considered the issue have uniformly held that Ohio law permits "[a] mortgagee, as a general rule, ... [to recover] ... the costs of an action to foreclose." *Landrum*, 267 B.R. at 583 n. 10 (citation omitted) (allowing foreclosure costs of $1,595.90). See also *In re Roach*, 285 B.R. 676, 679 n. 3 (Bankr.S.D.Ohio 2002) (allowing foreclosure costs of $966.50) (citing *Landrum*, 267 B.R. at 582); *In re Staud*, [2005 WL 4041160] (Bankr. S.D.Ohio May 25, 2005)("It has generally been understood that expenses, such as those associated with foreclosure actions, i.e., title report, court costs, and sheriff's fees, are proper.") (citations omitted).

*Tudor*, 342 B.R. at 570. *See also In re Bertsch*, 17 B.R. 284, 288 (Bankr.N.D.Ohio 1982) (allowing foreclosure court costs and cost of a judicial title report).

■■■ In order for fees to be allowable under § 1322(e) and Ohio law, as construed by the Ohio courts and the decisions of this district, those fees must be reasonable. *See e.g., In re Staud*, 2005 WL 4041160 (Bankr.S.D.Ohio May 25,

2005) (unreported); *Tudor*, 342 B.R. at 540; *Thompson*, 372 B.R. 860; *NovaStar Mortgage, Inc. v. Akins*, 2008 WL 4964323, at *7 (Ohio Ct.App. Nov. 28, 2008). The Debtors have focused on this aspect of claim allowance under § 1322(e) in arguing that the title insurance premium charge should be disallowed. They state that: "Debtor's (*sic*) position is that the title insurance premium is a totally unnecessary expense, was gratuitously ordered by the foreclosing creditor for its own benefit, and this cost, because it is unnecessary, should not be permitted to be passed on to the debtor in a bankruptcy." *Debtor's Memorandum Regarding Title Insurance Claim*, p. 4. The Debtors continue: "A priori, the cost in question must be a necessary cost." *Id.* at p. 3. In essence, the Debtors contend that if an expense is not "necessary", it is *per se* unreasonable and should be disallowed. The Debtors' emphasis on whether the title insurance premium "should ... be permitted to be passed on to the debtor in bankruptcy" is misplaced. As stated above, the focus in determining whether an expense may be recovered as part of a § 1322(e) arrearage is not whether it should be permitted to be "passed on" in the bankruptcy context, but rather, whether a state court judge would approve such fees as part of the foreclosure costs of a mortgagee.

The court has not been able to discern any requirement under § 1322(e) that an expense be a "necessary" expense to be allowable as part of a mortgagee's arrearage claim. While § 503(b) requires that certain expenses be "necessary" to be granted administrative expense priority, § 1322(e) does not contain such a requirement. To that extent, the Debtors' argument seeks to engraft a new requirement onto § 1322(e).

Yet, while an expense may not have to be "necessary" to be recoverable under § 1322(e), it still must be "reasonable."

*See e.g., In re Staud,* 2005 WL 4041160 (Bankr.S.D.Ohio May 25, 2005) (unreported); *Tudor,* 342 B.R. at 540; *Thompson,* 372 B.R. at 860; *In re Robb,* 2008 Bankr.LEXIS 1680, *11–12 (Bankr.S.D. Ohio June 10, 2008); and *NovaStar Mortgage, Inc.,* 2008 WL 4964323, at *7.

■ The Debtors rely upon *Tudor* for that proposition. In *Tudor,* the court noted that:

> Of course, the fact that Ohio law does not prohibit recovery of foreclosure costs does not give a foreclosing creditor a blank check. As Judge Aug noted in *Staud* ... an attorney's charge for completing pre-foreclosure title work must be reasonable and must not exceed the cost at which the service could have been obtained from a non-attorney....

*Tudor,* 342 B.R. at 571, n. 14. Similarly, in Robb, the court concluded that "[the mortgagee] may recover only its *reasonable* foreclosure costs," referencing the same footnote from *Tudor* and noting that the default section of the mortgage only permitted recovery of "reasonable costs and disbursements." *Robb,* 2008 Bankr.Lexis 1680 at * 11. This principle was aptly summarized in *Thompson* as follows:

> ... furthermore, when state law imposes a reasonableness requirement on attorney fees or other charges, that limitation will be enforced in a § 1322(e) cure situation. In other words, when a debtor chooses to cure a default pursuant to § 1322(e), the language of the statute does nothing more than give the creditor the benefit of its bargain to the same extent as it would have outside of the context of a bankruptcy filing.

*Thompson,* 372 B.R. at 865, n. 4. Ohio law also imposes a reasonableness requirement with respect to foreclosure costs. In discussing the itemization of expenses incurred by a mortgagee in a foreclosure proceeding, an Ohio Court of Appeals stated:

> ... [T]he mortgage company should submit an amount certain that is owed by the borrower for the principal, interest, and fees at the time of the final judgment. If the specific costs are submitted, the borrower has an opportunity to object before it becomes a judgment. Further, this "owed to date" approach permits the trial court to review the charges and make sure that they are accurate and reasonable.

*NovaStar Mortgage, Inc.,* 2008 WL 4964323, *7.

■ The court disagrees with the Debtors' logic as to why including a charge for title insurance premium as part of a mortgage arrearage, from their perspective, is unreasonable. As noted by HSBC, in Ohio, the amount of the title insurance premium is determined by statute and is based upon the fair market value of the property involved. *See* ORC § 3953.28. The Debtors do not dispute that the amount itself that HSBC charged was reasonable. They state that "it is immaterial that the cost of the title insurance was reasonable." The Debtors' logic falls short however with respect to the discretion mortgagees had, at least prior to the enactment of ORC 2329.191, as to the form of the title evidence they choose to use in Ohio foreclosure proceedings.[3]

---

**3.** ORC § 2329.191 is not directly applicable because its effective date was subsequent to the filing of this case and, as discussed above, the standard under § 1322(e) does not require that an item included as part of the arrearage claim be "necessary" under law, only that it be provided for under the agreement of the parties and not be forbidden by nonbankruptcy law. However, as mentioned by both parties, that statute addresses title work and title insurance in the context of foreclosure proceedings. Under ORC § 2329.191(B), preliminary and final judicial reports issued by a licensed title insurance agent on behalf of an

It was not unreasonable for HSBC in this case to choose to use a title insurance commitment and title insurance policy rather than other forms of title evidence if the cost of such title evidence was comparable, even if the Montgomery County Local Rules did not require that title insurance be used. If the cost of the title work is reasonable in comparison to the costs of other forms of evidence of title and in comparison to title work performed for other mortgagees in the county and area, such fees are reasonable irrespective of whether a local rule required the issuance of title insurance. Mortgagees incur those costs as a result of mortgagors' default and for the purpose of ensuring that all proper parties are joined in foreclosure proceedings. Mortgagees have no incentive to increase expenses in foreclosure proceedings on the assumption they might be able to recover those expenses if mortgagors file bankruptcy. In addition, a na-

tional mortgage lender should not be prevented from adopting a uniform policy of obtaining title insurance in all of its foreclosure proceedings if the cost is comparable to that of other forms of title evidence simply because the local court rules for a particular state subdivision do not mandate the obtaining of title insurance.

■ The court is not willing to construe Montgomery County Local Rule 2.23[4] requiring a certification by the attorney or party filing the complaint that all persons with an interest in the real property have been named as parties to the foreclosure proceeding as removing HSBC's discretion to provide title insurance as a form of title evidence. The Debtors' argument that the title insurance "was gratuitously ordered by the foreclosing creditor for its own benefit," i.e. since title insurance was not required by this local rule it was, therefore, not "necessary" and, therefore, "gratuitous" is not persuasive.

authorized title insurance company are now required with respect to "residential real estate consisting of one to four single-family units[.]" The costs of these reports, including any "premiums" may be taxed as costs of the foreclosure proceeding. Under ORC § 2329.191(C), with respect to "residential real estate consisting of more than four single-family units or of commercial real estate," the foreclosing party may either obtain preliminary and final judicial reports in accordance with subsection (B), or it may obtain title insurance with the costs of obtaining such title insurance being taxed as part of the court costs for the foreclosure proceeding. See ORC § 2329.191. Ultimately, the court does not find ORC § 2329.191 materially helpful on the issue of whether Ohio law prohibited HSBC from collecting the cost of title insurance in the foreclosure. First, as noted, that statute did not become effective until after the filing of this case and, therefore, is not directly applicable to this case. Second, although that section does not mandate title insurance for single family homes in foreclosure or authorize title insurance premiums to be taxed as court costs with respect to such properties (as opposed to commercial

properties), it does not prohibit a lender from obtaining such insurance and adding it to the balance due under the mortgage loan. Thus, there is no indication from this statute that the obtaining of title insurance by a mortgagee and charging the mortgagor such costs prior to the effective date of this statute was against Ohio law or public policy.

4. Specifically, Montgomery County Local Rule 2.23, in relevant part, provides that: In every action hereinafter filed in any division of the Common Pleas Court of Montgomery County, Ohio, wherein a judicial sale of real estate is contemplated by the Complaint or subsequent pleadings the party praying for said sale or the attorney for the party praying for said sale shall endorse thereon the following Certification: 1. "The undersigned hereby certifies that an examination of the public records of Montgomery County, Ohio, has been made to determine the ownership of subject real estate and all parties who may claim an interest therein, and that, in the opinion of the undersigned, all parties have been named as parties to this action," stating as exceptions any interested party not so named.

First, while Montgomery County Local Rule 2.23 only requires an attorney's certification that the proper persons have been made parties to the foreclosure, it implicitly requires some additional form of title evidence. Pursuant to Ohio Rule of Civil Procedure 11, the attorney's signature on the certification provided under Montgomery County Local Rule 2.23 "constitutes a certificate by the attorney . . . that the attorney . . . has read the document; that to the best of the attorney's . . . knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." A mortgagee's attorney's procurement of a title insurance policy with its corresponding title examination, or alternatively preliminary and final judicial reports, is consistent with an attorney's obligations under Ohio Rule of Civil Procedure 11. In addition, title insurance provides the imprimatur of the title agency and the title insurance underwriter to the title examinations thereby backing the reli-

ability of those searches and bolstering the efficacy of the foreclosure process.

Second, while the Debtors apparently concede that the preliminary and final title examinations were necessary, as they did not object to those fees and singled out the $171 title insurance premium as objectionable, some form of title evidence beyond a title examination itself was required by the local rules of courts in various Ohio counties.[5] Under the Debtors' argument, the cost of a preliminary judicial title report in a Montgomery County debtor's case would not be recoverable as being unnecessary and, therefore, unreasonable, because Montgomery County Local Rule 2.23 did not require such a report; whereas that same part of a mortgagee's claim for a debtor residing in neighboring Greene County would be recoverable because Greene County Local Rule 2.23 provides for such a report. The reasonableness of a mortgagee's arrearage claim should not depend upon the vagaries created by differing local court rules.[6]

---

**5.** Even prior to the enactment of ORC § 2329.191, a title examination was often not sufficient by itself to meet the foreclosure requirements in Ohio's Courts of Common Pleas. As the local rules of the Courts of Common Pleas in this district attached to the *Stipulation* reveal, various courts required some written evidence of the title examinations and appropriate certifications, such as preliminary and final judicial reports or title insurance commitments and policies, or an attorney's certification. *See* Exhibits C–1–C–6 *to the Stipulation* (Montgomery County Local Rule 2.23 required a certification by the attorney or party filing the complaint that, based upon an examination of the real estate records, all persons with an interest in the real property have been named as a party in the action (C–1); the Clark County Local Rules apparently had no requirement as to title evidence (C–2); Shelby County Local Rule 23 required a title opinion (C–3); Greene County Local Rule 2.23 required either a certification by the filing party or a preliminary judicial title report prepared by a "responsible title and abstract company" (C–4); the Warren County Local Rules apparently had no requirement as to title evidence (C–5); and the

Preble County Local Rules provided under a section titled "Judicial Sale of Real Estate": "On the day of sale, the Sheriff or his appointee shall announce that any purchaser shall have 20 days from the date of sale to obtain an examination of title to said real estate. Should the examination disclose the title so purchased to be unmarketable, by reason of any defect in the proceedings or the existence of any interest not disclosed, said purchaser may, within the twenty day period petition the Court by written motion requesting that said sale be set aside. If the Court, after hearing, finds said title to be unmarketable, the Court shall refuse to confirm the sale. The Court may, however, fix a reasonable time within which such defect(s) may be corrected." (C–6)).

**6.** It would appear that perhaps one of the reasons that the Ohio legislature enacted ORC § 2329.191 was to provide a uniform approach to title evidence in all of Ohio's counties and to put an end to the inconsistency from county-to-county as to what form of title evidence is sufficient in a foreclosure proceeding.

The Debtors' "gratuitous" argument also overlooks the fact that title insurance obtained by a foreclosing mortgagee also inures to a mortgagor's benefit by insuring both a clear title to the foreclosed property and a source of recovery for any cloud that may appear on that title, thereby increasing the property's marketability and value and correspondingly decreasing the deficiency claim a mortgagee would obtain against the mortgagor.[7] While in hindsight the title insurance premium did not benefit the Debtors, it could have benefited them had the foreclosure action not been stayed by their filing bankruptcy.

Finally, the court is not determining that the fee for procuring title insurance in all situations would be recoverable under § 1322(e). For instance, if the title insurance charge was duplicative of other title evidence charges, it would have been unreasonable and, therefore, not recoverable under § 1322. Thus, had HSBC obtained both preliminary and final judicial reports *and* title insurance, the charge for the title insurance premium would be unreasonable as being duplicative and unnecessary and, therefore, should not be passed on to the Debtors.[8] However, in this case, preliminary and final title examinations were performed and title insurance was obtained, rather than a preliminary and final judicial report. *See Stipulation* pp. 5 & 7 and Exhibits E–H to the *Stipulation.* Thus, there is no evidence of duplicity in this case.

The title insurance premium would also be unreasonable and could not be recovered under § 1322(e) if its cost was excessive in comparison to the cost of a preliminary and final judicial report or other comparable evidence of title. *See Tudor,* 342 B.R. at 571 n. 14. In this case, the total cost of the title evidence amounted to $596 (excluding copies). No evidence has been introduced to establish that the title evidence fees using title insurance were unreasonable in comparison to another form of title evidence such as preliminary and final title reports. In *Tudor,* the court approved title work fees totaling $450 and in *Robb* title work fees totaling $475. *See Tudor,* 342 B.R. at 571; *Robb,* 2008 Bankr.Lexis 1680 at *13. While the costs in this case may be higher than in *Robb,* they remain reasonable and, therefore, are allowable. Merely because HSBC chose to use title insurance as its form of title evidence as opposed to preliminary and final judicial reports or some other form of title evidence does not render the title insurance premium unreasonable.

## IV. Conclusion

The Debtors' position would require the court to interfere with the discretion HSBC had to choose the manner in which it wished to provide title evidence in the foreclosure proceeding. The only role of the court is to ensure that the costs sought to be recovered from debtors comply with the underlying contractual documents and nonbankruptcy law, including the reasonableness requirement under Ohio law. *See e.g., Tudor,* 342 B.R. at 571; *Thompson,*

---

7. For instance, newly enacted ORC § 2329.191(C) allows a purchaser at a foreclosure sale to obtain a title insurance policy based upon the commitment obtained by the mortgagee by paying the title insurance policy premium.

8. In *Robb,* the court disallowed a $270 fee for a preliminary judicial report when the mortgagee had already incurred $350 for "preliminary title service" and another $125 for a "Title Update," finding that additional $270 charge as being "unnecessary." 2008 Bankr.LEXIS 1680, at *13. Thus, the court allowed a total of $475 for the title work, as opposed to $745 sought by the mortgagee. *See Id.; see also* ORC § 2329.191 requiring either preliminary and final judicial reports or title insurance, depending upon the nature of the real property.

372 B.R. at 865, n. 4. Hypothetically standing in the shoes of an Ohio state court judge, the court finds that the $171 expense that HSBC incurred in obtaining the title insurance is in accordance with the Note, Mortgage and Ohio law, including being reasonable and may be recovered under § 1322(e).

The Debtors' objection to the $171 charge on HSBC's proof of claim for the costs of the title insurance premium is denied. The court will enter a separate order consistent with this Decision.

**IT IS SO ORDERED.**