In re Carl E. **KREITZER,** Sherry L. Kreitzer, Debtors.

Carl E. Kreitzer, Sherry E. Kreitzer, Plaintiffs

v.

**Household Realty Corporation et al., Defendants.**

Bankruptcy No. 10–35888. Adversary No. 11–3273.

United States Bankruptcy Court, S.D. Ohio, Western Division.

April 4, 2013.

Charles J. Roedersheimer, Dayton, OH, for Plaintiffs.

Jesse R. Lipcius, Reuel D. Ash, Cincinnati, OH, for Defendants.

**Decision Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and Denying Plaintiffs' Cross–Motion for Partial Summary Judgment**

GUY R. HUMPHREY, Bankruptcy Judge.

## I. Introduction

This decision concerns three separate issues arising out of an adversary proceeding filed within the debtors' Chapter 13 bankruptcy case: 1) whether the debtors can bifurcate a residential mortgagee's claim into secured and unsecured portions because of the inclusion of language within the mortgage which provides the mortgagee with a security interest in miscellaneous proceeds, generally defined as including compensation, damages, or proceeds paid by a third party for misrepresentations of, or omissions as to, the value or condition of the residence; 2) whether the debtors are barred from pursuing some of their causes of action under preclusion principles as a result of determinations made in a state court foreclosure action; and 3) whether the debtor or a trustee may avoid a mortgage based upon a defective recording of a mortgage assignment. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## II. Findings of Fact

Carl Kreitzer borrowed $114,400 from Decision One Mortgage Company, LLC, Ltd. ("Decision One"), evidenced by an adjustable rate promissory note (the "Note"; Movant Exhibit 1) signed on July 20, 2001. The Note was endorsed in

blank, with no date included, by Charise Lewis, a closing agent for Decision One. The Note is secured by a mortgage granted by the debtors, Carl and Sherry Kreitzer (the "Kreitzers"), on their residence at 3434 Lindale Avenue, Dayton Ohio (the "Property"), signed on July 20, 2001 (the "Mortgage"; Movant Exhibit 1).

The Mortgage was recorded by Decision One on August 2, 2001. A Corporate Assignment of Mortgage assigned the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") on July 30, 2001, two days prior to the recording date. A separate corporate assignment dated April 24, 2009 assigns the Mortgage and Note from MERS, acting as nominee for Household Finance Corporation, to Household Realty Corporation ("Household Realty"). The 2009 assignment was signed by Christopher Ribbeck, Vice–President ("Ribbeck") and notarized by Jamie Giglio ("Giglio").

On April 28, 2009 Household Realty filed a complaint in foreclosure against the Kreitzers in the Montgomery County Ohio Court of Common Pleas (the "State Court"). On June 16, 2009 the Kreitzers filed a pro se answer which stated that "[w]e are committed to remaining in our home of twelve years. We have maintained this home in a very satisfactory manner performing numerous updates as well as making plans for further improvements. We are agreeable to any reasonable resolutions which will avoid foreclosure." Household Realty moved for summary judgment on June 29, 2009 and the Kreitzers failed to respond. The motion included an affidavit from an employee of HSBC, an agent for Household Realty, which indicated Household Realty acquired the Note and Mortgage before April 21, 2009 and that the Note was in default. The State. Court entered judgment in favor of Household Realty on September 29, 2009 (the "State Court Judgment"). The State Court Judgment states that Household Realty "submitted sufficient evidence that it was the owner in possession of both the Note and the Mortgage prior to the filing of the complaint and the execution of the assignment. Accordingly, the court finds that [Household Realty] was the owner of both the note and mortgage when the case was filed and has standing to bring this case." [1] The foreclosure sale was stayed by the Kreitzers' bankruptcy filing.

On September 13, 2010 the Kreitzers filed a Chapter 13 petition for relief (estate doc. 1) commencing their underlying bankruptcy case. The Kreitzers' Chapter 13 plan (estate doc. 7) states that 3434 Lindale Avenue, Dayton Ohio (the "Property") is their personal residence and proposes to treat the secured mortgage loan by seeking a loan modification and, in the interim, paying the current terms of the loan, but not any pre-petition arrearage. If a modification did not occur within six months after confirmation of the plan, the Property would be surrendered in full satisfaction of Household Realty's claim or the Kreitzers would pay "the allowable amount of Creditor's claim." Household Realty objected, arguing that the mortgage loan could not be modified because it consti-

---

1. The State Court Judgment attached to Household's Summary Judgment Motion (doc. 37–5), states that "The Court finds that the Defendant, Carl E. Kreitzer, filed a Chapter 7 Bankruptcy case in the U.S. Bankruptcy Court, Southern District of Ohio, Western Division, under Case Number 03–37460 and that Plaintiff is not pursuing a personal money judgment against said Defendant." The docket for that bankruptcy case reflects that a reaffirmation agreement with Household Mortgage Services was filed on November 4, 2003 (doc. 9).

tutes the Kreitzers' primary residence (estate doc. 15). The objection was withdrawn (estate doc. 22) and the plan was confirmed (estate doc. 17).

In addition, the Kreitzers objected to Household Realty's proof of claim [claim 2–1] (the "Proof of Claim"), arguing it has failed to establish ownership of the claim, the listed principal and arrearage is inaccurate because it fails to account for certain monthly payments made by the Kreitzers, and various costs and fees included in the Proof of Claim are unreasonable (estate doc. 18). Household Realty responded by denying all the allegations of the claim objection (estate doc. 20). The parties agreed to address this dispute and a supplemental proof of claim concerning 2010 real estate taxes (the "Supplemental Proof of Claim") through an adversary proceeding. *See* proof of claim 23–1 and estate docs. 76, 80 & 85.

On August 2, 2011 the Kreitzers filed a multi-count complaint to commence this adversary proceeding against Household Realty and its servicer, HSBC Mortgage Services, Inc. ("HSBC") (collectively, "Household") (doc. 1). The first count seeks to bifurcate Household Realty's claim into secured and unsecured portions under 11 U.S.C. § 506[2] on the basis that the mortgage loan is not protected by the provision in § 1322(b)(2) barring modification of claims secured only by a debtor's principal residence. The second count seeks disallowance of the Proof of Claim in the amount of the charges included in it for forced place insurance and inspection fees on the basis that those fees are unreasonable under the loan documents. The third count seeks sanctions under Federal Rule of Bankruptcy Procedure 9011 against Household on account of the Proof of Claim being false and fraudulent. The

fourth count seeks disallowance of the Proof of Claim on the basis that Household lacked standing to file it. The fifth count seeks avoidance of the Mortgage under § 544(a)(3) on behalf of the Chapter 13 Trustee as a hypothetical bona fide purchaser of real property on the basis that an assignment of the Mortgage was not properly recorded.

Household Realty and HSBC answered (doc. 17), generally denying the Kreitzers' allegations. Household Realty and HSBC moved for summary judgment (doc. 42) and the Kreitzers filed a response and a cross-motion for partial summary judgment as to the first count (doc. 47).

### III. Positions of the Parties

The Kreitzers argue they are entitled to summary judgment as to the first count of their complaint because Household's claim is secured through the Mortgage, which creates an additional security interest in "miscellaneous proceeds." The premise of Kreitzers' argument is that § 506 allows claims secured by collateral to be bifurcated into secured and unsecured portions, except when the claims are secured only by real property that is the debtor's principal residence. The Kreitzers argue that since the Mortgage is secured by miscellaneous proceeds—which are personal property—the claim is not secured only by real property that is the Kreitzers' residence, but rather, is also secured by personal property, thereby removing the Mortgage from the anti-modification protection of § 1322(b)(2).

The second count of the complaint is an objection to $4,331 of Household's claim on the basis that the charges for forced place insurance, foreclosure fees, and inspection fees are unreasonable. Household argues

---

**2.** Unless otherwise noted, all statutory references are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. §§ 101–1532", cited hereinafter in this decision as "§ ——".

that this count is barred by the doctrine of res judicata due to the pre-petition foreclosure judgment.

The Kreitzers' third count seeks sanctions under Federal Rule of Bankruptcy Procedure 9011 on account of the filing of the Proof of Claim, including the award of actual and punitive damages, attorney fees, and court costs. Specifically, the Kreitzers claim that the Mortgage, which was attached to the Proof of Claim, failed to show HSBC had the authority to assign the Mortgage from MERS to Household Realty on April 24, 2009. The Kreitzers assert that the signing of the assignment by Christopher Ribbeck, acting as a vice-president of MERS, was inadequate because Ribbeck is an employee of HSBC. The Kreitzers also assert his signature was not properly acknowledged by the notary, an individual named Jamie Giglio. The Kreitzers assert Ribbeck and Giglio alternated in roles with HSBC and MERS and routinely signed loan documents and had them notarized outside the signer's presence. The Kreitzers assert Household and its agent should have been aware the Proof of Claim was fraudulent.

Kreitzers' fourth count seeks to have the Proof of Claim disallowed on the basis that Household lacked standing under Federal Rule of Civil Procedure 17 to file it.

In the fifth count of their complaint, the Kreitzers assert derivative standing on behalf of the Chapter 13 Trustee to avoid the Mortgage pursuant to § 544 and treat Household's claim as unsecured on account of the second assignment of the Mortgage not having been witnessed by Giglio as the witness.

Household argues that counts three through five are barred under the doctrines of res judicata and collateral estoppel because either the issues raised in those counts were actually litigated and determined in the State Court or if they were not litigated in the State Court, they were compulsory counterclaims which should have been pursued against the defendants in the State Court foreclosure action.

## IV. Legal Analysis

### A. FIRST COUNT—The Miscellaneous Proceeds Provision of the Mortgage Does Not Provide for Additional Security and, Therefore, The Anti–Modification Exception in § 1322(b)(2) Is Applicable, *Barring Modification of the Mortgage through the Plan*

■ The Kreitzers argue that the Mortgage may be modified through their Chapter 13 plan because § 1322(b)(2) limits the protection from modification afforded to residential mortgages to "a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). There is no dispute that the Property is the Kreitzers' principal residence and that the Mortgage, assuming that it is valid and enforceable, serves as a lien against the Property. The issue is whether the "miscellaneous proceeds" provision of the Mortgage creates an additional security interest in personal or intangible property, specifically proceeds from a "chose in action" or cause of action for misrepresentations or omissions as to the value or condition of the Property.

The Kreitzers assert that the assignment of "Miscellaneous Proceeds" to the mortgagee in Section 11 of the Mortgage expands the lien beyond the Property. Section 11 of the Mortgage is titled "Assignment of Miscellaneous Proceeds; Forfeiture" and states that "All miscellaneous proceeds are hereby assigned to and shall be paid to the Lender." "Miscellaneous proceeds" are defined at the beginning of

the Mortgage in subsection "L" as "any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property."

The Kreitzers do not take issue with the interests conveyed to Household through subparagraphs (i), (ii), and (iii) of the definition of "miscellaneous proceeds." The ability to include those items in mortgages without jeopardizing the § 1322(b)(2) exception has been largely addressed and resolved in favor of residential mortgage lenders through case law and the Bankruptcy Code's definitions of "debtor's principal residence" and "incidental property." The Kreitzers only take issue with subparagraph (iv) dealing with proceeds received from a claim relating to misrepresentations as to the value or condition of the Property.

Fortunately the court is not writing on a blank slate with respect to this issue. In *Allied Credit Corp. v. Davis*, the Sixth Circuit issued a leading decision discussing the parameters of the § 1322(b)(2) mortgage modification exception. 989 F.2d 208, 211–12 (6th Cir.1993). The court noted that the legislative history of the exception indicates that "it was designed to promote 'the increased production of homes and to encourage private individual ownership of homes as a traditional important value in American Life.'" *Id.* at 210, *citing Fed. Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1434 (6th Cir.

1985). *See also Nobelman v. American Sav. Bank*, 508 U.S. 324, 332, 113 S.Ct. 2106, 124 L.Ed.2d 228 (Stevens, J. concurring) (The legislative history of the exception provided by § 1322(b)(2) indicates "that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market.").

In *Davis* the Sixth Circuit determined that a provision of a mortgage requiring that the mortgagor provide hazard insurance for the secured real property did not provide "additional security" for the loan. In doing so the court noted that virtually every mortgage contains such a requirement and that to rule that such a common place mortgage provision allows a debtor to modify a mortgage loan by bifurcating the claim "would completely eviscerate the protective exception for residential lenders found in Section 1322(b)(2)" and render the statute meaningless. *Davis*, 989 F.2d at 211. Likewise the Court held that the granting of a security interest in "rents, royalties, profits, and fixtures" did not take the mortgage out of the protection afforded by the § 1322(b)(2) exception because such interests are "incidental benefits" that do not constitute additional security under § 1322(b)(2). In *Davis* the Court emphasized that "items which are inextricably bound to the real property itself as part of the possessory bundle of rights" do not render the mortgage modifiable. *Id.* at 213.

Following *Davis* and a number of other decisions construing the § 1322(b)(2) exception,[3] Congress, through the Bankruptcy Abuse and Prevention Act of 2005 ("BAPCPA"), provided a definition for "debtor's principal residence," defining it

---

**3.** *See PNC Mortgage Co. v. Dicks,* 199 B.R. 674, 679 n. 3 (N.D.Ind.1996) for an extensive list of earlier decisions analyzing particular clauses of mortgages in relation to § 1322(b)(2).

in relevant part, as "a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to the real property[.]" 11 U.S.C. § 101(13A).[4] Congress defined "incidental property" as:

(A) property commonly conveyed with a principal residence in the area where the real property is located;

(B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and

(C) all replacements or additions.

11 U.S.C. § 101(27B).

The Kreitzers argue that, unlike insurance proceeds, which are covered by the definition of incidental property, the miscellaneous proceeds resulting from a claim for misrepresentation or fraudulent omission relate to a separate chose in action and cannot be included within the definition of real property under state law or the definition of principal residence under the Bankruptcy Code. Cf. *Thomas v. Countrywide Home Loans, Inc. (In re Thomas)*, 344 B.R. 386, 392–93 (Bankr.W.D.Pa.2006) (deciding under Pennsylvania law, in dicta, that the "miscellaneous proceeds" provision for "misrepresentations of, or omissions as to, the value and/or condition of the property" constitutes a separate chose in action independent of the security interest in the real property). The court rejects Kreitzers' argument and determines that this court would need a clear change in current law that such mortgage loans could be bifurcated before it could embrace the argument the Kreitzers have raised.

The proceeds from a cause of action for misrepresentation of the value or condition of the real property that is the subject of a mortgage is not additional security and is the type of "incidental benefit" which the Sixth Circuit found is "inextricably bound to the real property itself as part of the possessory bundle of rights." *Davis*, 989 F.2d at 213. It would be illogical to determine that if proceeds used to compensate for the diminishment in the value of property securing a loan as a result of fire or a storm are part of this "bundle of rights," that proceeds used to compensate for value that was misrepresented and upon which that loan was based are not part of that same "bundle of rights." Thus, it should make no difference if the value upon which the real estate loan is based is wiped out by storm or fire or because the value was misrepresented in the first place—in either case the proceeds are part of the same bundle of rights—rights intended to protect the lender's side of the bargain, i.e. value securing the loan it made to the borrowers. Like the requirement to provide hazard insurance, to hold that this requirement assigning interests in claims for misrepresentation as to the value or condition of the real property constitutes an additional security interest would erode the safe harbor for residential lenders provided by § 1322(b)(2). To characterize proceeds generated only to protect a lender's security interest in real property as a separate security interest in personal property would necessarily mean that a lender could not protect its security interest through government condemnation, conveyances out of trust or fraudulent and deceptive acts. The borrower's agreement to assign such proceeds is not a separate

---

4. The language of current version of § 101(13A) was modified as part of the Bankruptcy Technical Corrections Act of 2010 to clarify that the property must be used as a principal residence. No substantive change was intended. *See* PL. 111–327, 124 Stat. 3557.

or additional security interest, but merely a provision to protect the lender's security interest in the real property.

A financial or economic analysis establishes that, like hazard insurance, the assignment of claims or proceeds of claims for misrepresentation as to the value or condition of the real property does not serve as additional collateral. If Household secured the loan with the real estate and a certificate of deposit or an automobile, the certificate of deposit or automobile would serve as additional collateral in addition to the value of the real estate. However, in the case of proceeds from hazard insurance or from a claim for misrepresentation as to the value or condition of the real property, the proceeds replace the value lost in the real estate due to the fire or other damage or due to the misrepresentation, rather than serving in addition to the value of the real estate. Thus, the proceeds serve as replacement security, thereby encouraging lenders to loan money based upon the real estate—the stated legislative purpose for the exception.

The Kreitzers' argument that the doctrine of expressio unius exlcusio alterius establishes that Congress intended to exclude from "incidental property" proceeds from a cause of action for misrepresentation of the value or condition of real property is not well taken. *See Marx v. General Revenue Corp.,* —— U.S. ——, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013) ("We have long held that the *expressio unius* canon does not apply unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it, and that the canon can be overcome by contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion[.]" (internal citations and quotation marks omitted)). The definition of incidental property added by Congress through BAPCPA does not change the prohibition against modifying residential mortgages and it is unlikely that Congress, by defining "incidental property," intended to introduce such a fundamental change in the residential mortgage market in the United States by allowing countless mortgages to be bifurcated due to standard Fannie Mae and Freddie Mac language. The codification of "incidental property" appears to codify *Davis* and similar decisions and was not intended to limit "incidental property" to those items specifically described in § 101(27B). If anything, the broad general term "rights," included in the list under § 101(27)(B)(B), should be read at least coextensively with the "bundle of rights" discussed in *Davis.*

For these reasons, the court grants summary judgment to Household on the first count of the complaint and denies the Kreitzers' cross-motion for summary judgment.

### B. SECOND COUNT—The Second Count is not barred by *Res Judicata or Collateral Estoppel*

The Kreitzers' second count concerning charges included in the Proof of Claim is not barred under res judicata or preclusion principles and, therefore, summary judgment is denied to Household on that claim. Through the second count the Kreitzers assert that the amounts which Household has included in the Proof of Claim for property insurance which it paid for on the Property (commonly known as "forced place insurance"), foreclosure fees, and inspection fees are unreasonable under the terms of the Mortgage and, therefore, they seek to reduce the claim of Household by $4,331. Household contends that these amounts were liquidated through the foreclosure action and are not subject to collateral attack in this case and that any claim against Household regarding these

amounts was a compulsory counterclaim in the foreclosure action and barred from being re-litigated.

■■■ Federal courts must give a state court judgment the same preclusive effect as the law of the state in which the judgment was rendered. *Migra v. Warren Cty. Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Pursuant to the res judicata or claim preclusion doctrine under Ohio law, a valid, final judgment rendered upon the merits of a court by a court of competent jurisdiction bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). Claim preclusion has four elements "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir.1997). The State Court Judgment was a final judgment based upon a summary judgment motion and is entitled to preclusive effect under Ohio law. *Hall v. Gibson Greetings, Inc.*, 971 F.Supp. 1162, 1164 (S.D.Ohio 1997). *See also Birgel v. Bd. of Comm'rs of Butler County, Ohio*, 125 F.3d 948 (6th Cir.1997) (a dismissal under Federal Rule of Civil Procedure 56 "operates as an adjudication on the merits.")

■■■ Consistent with the res judicata doctrine, when a compulsory counterclaim is not asserted, it is considered barred by the doctrine of res judicata or claim preclusion under Ohio law. *Rettig Enters., Inc. v. Koehler*, 68 Ohio St.3d 274, 626

N.E.2d 99 (1994). Ohio Rule of Civil Procedure 13(A) states that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The purpose of this rule is to avoid multiple rounds of litigation that concern a single transaction or occurrence. In determining whether Rule 13(A) applies, the Supreme Court of Ohio has endorsed the "logical relation" test used in the federal courts. *Koehler*, 626 N.E.2d at 103.

Applying Ohio law, decisions have held that charges included within a mortgagee's claim for prepetition foreclosure costs are not allowable to the extent they are not reasonable in amount. *In re Thompson*, 420 B.R. 763, 768 (Bankr.S.D.Ohio 2009); *In re Thompson*, 372 B.R. 860 (Bankr. S.D.Ohio 2007); *In re Tudor*, 342 B.R. 540 (Bankr.S.D.Ohio 2005). These decisions all rely on an Ohio Court of Appeals decision in which the court stated that:

> [T]he mortgage company should submit an amount certain that is owed by the borrower for the principal, interest, and fees at the time of the final judgment. If the specific costs are submitted, the borrower has an opportunity to object before it becomes a judgment. Further, this "owed to date" approach permits the trial court to review the charges and make sure that they are accurate and reasonable.

*NovaStar Mortgage, Inc. v. Akins*, 2008 WL 4964323, at *7 (Ohio Ct.App. Nov. 21, 2008).

■■■ The State Court determined the sum certain the Kreitzers owed on their mortgage loan "except to the extent the payment of one or more specific such items [are] prohibited by Ohio law...." Thus, it

did not rule on an itemization of Household's charges and exempted out approval of any charges prohibited by Ohio law, which would include any specific charges determined to be unreasonable in amount. Movant Exhibit 5, p. 4. Household did not obtain the *NovaStar* approval of its itemized charges which would serve as a basis under preclusion principles to prohibit this court from reviewing those charges. This issue specifically was omitted from the State Court Judgment and was not a compulsory counterclaim necessary to rule upon the foreclosure. Additionally, it is not clear if some of these charges were added to the account after the judgment was entered. Accordingly, summary judgment is denied to Household as to the second count.

### C. THIRD AND FOURTH COUNTS—The Third and Fourth Counts are barred by *the Doctrines of Res Judicata and Collateral Estoppel*

■ Through the third count, Kreitzers seek compensatory damages, punitive damages, sanctions, attorney fees, and court costs on account of Household's alleged fraudulent filing of its Proof of Claim, while the fourth count seeks a declaration from this court that Household lacked standing to file the Proof of Claim. Household argues that both of these counts are subject to res judicata because they were not brought as compulsory counterclaims in the state court foreclosure proceeding. They also assert that the third and fourth counts are barred by the doctrine of collateral estoppel, also known as issue preclusion. The court agrees with Household that these counts are barred under res judicata or issue preclusion principles.

The third cause of action states the proof of claim filed by Household is fraudulent and warrants sanctions under Federal Rule of Bankruptcy Procedure 9011.

This count is premised upon allegations that the Second Assignment of the Mortgage was defective and that the filer of the Proof of Claim knew or should have known that the Second Assignment was faulty. However, the State Court determined that Household was the real party in interest at the time the foreclosure complaint was filed and had standing to proceed with the foreclosure action. *See Fed. Home Loan Mortgage Corp. v. Schwartzwald,* 134 Ohio St.3d 13, 979 N.E.2d 1214 (2012) (standing must be established at the commencement of the foreclosure). All the issues raised by the Kreitzers pre-date the foreclosure filing and could have been raised with the State Court, whether as a counterclaim or defense, but were not. The issues are logically related and in fact integral to the same issues brought by the mortgagee in the foreclosure litigation. The State Court Judgment determined that Household had standing and the Kreitzers are revisiting the same issue. *See* Movant Exhibit 5, p. 3 ("The Court finds that Plaintiff [Household Realty Corporation] has submitted sufficient evidence that it was the owner in possession of both the note and mortgage prior to the filing of the Complaint and the execution of the assignment. Accordingly, the Court finds that Plaintiff was the owner of both the note and mortgage when the case was filed and has standing to bring this case"). The State Court Judgment is entitled to full faith and credit to the same extent it would be in Ohio state courts. 28 U.S.C. § 1738; *Marrese v. Amer. Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Thus, because the State Court determined that Household was the "owner in possession" of the Note and Mortgage and had standing to bring the foreclosure action, Household had standing to file the Proof of Claim. *See In re Smoak,* 461 B.R. 510 (Bankr.S.D.Ohio 2011).

In the fourth count, the Kreitzers assert that Household lacked standing when it

709

filed the Proof of Claim.[5] But, as with the third cause of action, the State Court Judgment determined that Household had the proper standing. While standing to file the proof of claim could have changed based on events subsequent to the foreclosure, the allegations in the complaint are solely based on allegations concerning pre-petition events related to Household's standing, all of which could have been raised as a counterclaim or defense at the time of the foreclosure proceeding. The Kreitzers are not attacking any transfer or occurrence which happened after the filing of the foreclosure action. Accordingly, they are barred by the res judicata effect of the State Court Judgment and may not raise the standing issues again. To re-hear these issues, this federal court would be impermissibly collaterally attacking the State Court Judgment.

■ In addition, collateral estoppel or issue preclusion "bars relitigation of issues in a subsequent proceeding which were actually litigated and determined in a previous suit." *Parklane Hosiery Co. v.*

Shore, 439 U.S. 322, 336, n. 23, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir.1999); *Estate of Jones v. Walters (In re Walters)*, 142 B.R. 229, 231 (Bankr.S.D.Ohio 1992). Collateral estoppel promotes judicial economy and protects litigants from re-litigating an identical issue. *Id.* The standing of Household was actually litigated and determined on the merits through Household's summary judgment motion ruled upon in the State Court Judgment. Therefore, even assuming arguendo res judicata did not apply, issue preclusion would bar re-litigating these same standing issues addressed by the State Court.

Household is granted summary judgment as to the third and fourth counts.[6]

**D. FIFTH COUNT—Neither a Trustee nor the Kreitzers May Avoid a Recorded *Mortgage Due to a Faulty Assignment***

■ The court is granting summary judgment to Household on Kreitzers' fifth

5. To the extent that Kreitzers are focusing on a lack of proper assignments of the Mortgage, the holder of a note secured by a recorded mortgage holds a secured claim, regardless of whether the assignments were recorded because the mortgage is an incident of that debt. As the court has mentioned in prior reported decisions, this principle dates back to some of the earliest reported decisions concerning mortgages in Ohio and remains good law. *See, e.g. In re Moehring*, 485 B.R. 571, 577–78 (Bankr.S.D.Ohio 2013) ("Ohio law has long provided that mortgages are an incident of the debt or note and follow the debt. This legal principle has been in place in Ohio since at least 1831."). Issues concerning the assignment of a mortgage do not bear on the enforceability of the note by the holder of the note. *Id.*

6. Although they lacked counsel, the Kreitzers are responsible for failing to respond to Household's State Court summary judgment motion. *Zukowski v. Brunner*, 125 Ohio St.3d 53, 925 N.E.2d 987, 989–90 (2010) (pro se

litigants held to the same standard as those represented by counsel). The cases cited by the Kreitzers are all distinguishable. *Puckett v. Cox*, 456 F.2d 233, 236 (6th Cir.1972) does not apply Ohio law. *Young v. Hobbs*, 182 Ohio App.3d 649, 914 N.E.2d 444 (2009) is a decision concerning leniency in the presentation of an appellate argument by a pro se litigant; *See also In re Pallay*, 2006 WL 1875899 (Ohio Ct.App. June 28, 2006) (similar); *Besser v. Griffey*, 88 Ohio App.3d 379, 623 N.E.2d 1326 (1993) (leniency in the court's interpretation of a poorly written pro se complaint.). None of these cases excuse the failure to respond to a summary judgment motion or analogous filing. While a court may give a pro se party the benefit of the doubt in construing pleadings, allegations, and arguments, pro se parties nevertheless proceed at their own peril without counsel and are bound by the same rules of procedure and evidence as a party represented by counsel and a final judgment is just as binding on a pro se party as a party represented by counsel.

cause of action because defectively executed assignments of mortgages do not render the underlying mortgage avoidable.

Kreitzers' fifth count seeks to avoid the Mortgage pursuant to § 544(a) and treat Household's claim as unsecured under § 506 on account of the Mortgage documents not having been recorded properly under Ohio Revised Code §§ 5301.01 and 5301.25. The Kreitzers do not take issue with the execution and recording of the original Mortgage, but rather, with the Second Assignment of the Mortgage, asserting that Ribbeck's signature on the April 24, 2009 assignment was not witnessed by Giglio as the notary public. See Complaint, ¶ 122. The complaint does not identify which sub-section of § 544(a) they are applying.[7]

This court rejected the legal argument which Kreitzers are making with respect to the assignment of the Mortgage in a prior reported decision. Because an assignment of a mortgage is not a transfer of the underlying real property, if the underlying mortgage is properly filed and recorded, a subsequent transfer of that mortgage by assignment, even if that assignment is not properly executed or recorded, does not render the mortgage unperfected. *Noland v. Wells Fargo Bank (In re Williams)*, 395 B.R. 33, 43–44 (Bankr.S.D.Ohio 2008). *See also Royal v. First Interstate Bank (In re Trierweiler)*, 484 B.R. 783, 795 (10th Cir. BAP 2012) ("Even if there was a requirement to record assignments in Wyoming, failing to

record an assignment would not have the effect of invalidating the underlying mortgage because statutes that require recording assignments of mortgages are intended to govern priorities between lenders, not the validity of liens."); *Slorp v. Lerner*, 2013 WL 941430, at *3 (S.D.Ohio March 8, 2013) and *Bank of N.Y. Mellon Trust Co. v. Unger*, 2012 WL 1567192, at *7 (Ohio Ct.App. May 3, 2012) (both holding that the borrowers did not have standing to challenge the validity of mortgage assignments because they were not parties to the assignments).

The court grants summary judgment to Household on the fifth count of the Complaint.

## V. Conclusion

For the foregoing reasons, the court grants Household summary judgment as to the first, third, fourth, and fifth counts of the complaint; denies Household summary judgment as to the second count; and denies the Kreitzers' cross-motion for summary judgment as to the first count. The court is contemporaneously entering an order consistent with this decision.

**IT IS SO ORDERED.**

---

7. The Kreitzers appear to be asserting derivative standing on behalf of the Chapter 13 Trustee, who is not a party to this adversary proceeding. Complaint, ¶¶ 126–127. The Trustee need not be a party if the Kreitzers are exercising derivative standing on behalf of the Chapter 13 Trustee. However, the language in the Complaint is insufficient to establish derivative standing and the court would require a clearer record were the fifth count not being dismissed. *See Bank of New York v. Sheeley (In re Sheeley)*, 2012 Bankr.LEXIS 1374 at *36–37 (Bankr. S.D.Ohio April 2, 2012) ("The [Chapter 13 Debtors] have not provided any evidence that they have made a demand upon the trustee to exercise the trustee's strong arm powers under § 544(a) or that the trustee has declined to do so.").