**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 15-1800**

───────────────

In Re: GREGORY BIRMINGHAM,

         Debtor.

-------------------------

GREGORY BIRMINGHAM,

         Plaintiff - Appellant,

   v.

PNC BANK, N.A.,

         Defendant - Appellee.

───────────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, District Judge. (8:15-cv-00108-PWG; 14-18432; 14-00378)

───────────────

Argued: October 26, 2016        Decided: January 18, 2017

Amended: January 20, 2017

───────────────

Before THACKER and HARRIS, Circuit Judges, and Gerald Bruce LEE, United States District Judge for the Eastern District of Virginia, sitting by designation.

───────────────

Affirmed by published opinion. Judge Lee wrote the opinion, in which Judge Harris and Judge Thacker joined.

───────────────

**ARGUED:** John Douglas Burns, THE BURNS LAW FIRM, LLC, Greenbelt, Maryland, for Appellant.  Daniel J. Tobin, BALLARD SPAHR LLP, Washington, D.C., for Appellee.  **ON BRIEF:** Bryan J. Harrison, Matthew G. Summers, BALLARD SPAHR LLP, Baltimore, Maryland, for Appellee.

_____

LEE, District Judge:

The anti-modification clause in 11 U.S.C. § 1322(b)(2) of the Bankruptcy Code protects a mortgagee from having its claim in a Chapter 13 bankruptcy proceeding modified, if the mortgage is secured "only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The issue in this appeal is whether reference in the Deed of Trust to escrow funds, insurance proceeds, or miscellaneous proceeds constitute additional collateral or incidental property for purposes of § 1322(b)(2). We hold that these items constitute incidental property, which entitles Appellee to anti-modification protection under § 1322(b)(2). The district court's determination is therefore affirmed.

I.

On May 23, 2014, Appellant Gregory John Birmingham ("Birmingham") filed a voluntary petition for Chapter 13 bankruptcy. J.A. 342-45. One of the claims against Birmingham is a mortgage in the amount of $343,101.87 held by Appellee PNC Bank, N.A. ("PNC"), and secured by a deed of trust ("Deed of Trust") on Birmingham's primary residence at 11721 Chilcoate Lane, Beltsville, Maryland 20705 ("Property"). J.A. 329. According to the District of Maryland Claims Register, there is an arrearage on the mortgage of $93,386.58 as of June 23, 2015. J.A. 329.

Birmingham filed his Original Chapter 13 Bankruptcy Plan on June 4, 2014. J.A. 378. At that point in time, the Property was valued at only $206,400. J.A. 362. The Bankruptcy Plan included a cram-down of PNC's interest in the Property. J.A. 385-86. After a series of objections and amendments to the Bankruptcy Plan, Birmingham filed a Complaint for Declaratory Action pursuant to 28 U.S.C. §§ 2201-2202; 11 U.S.C. §§ 105(a), 506(a), 2201 (11721 Chilcoate Ln Beltsville, MD 20705). J.A. 378-400. Birmingham's Complaint requested a declaration that that PNC's claim be treated as a partially unsecured claim subject to modification. J.A. 399-400.

Birmingham argued that certain provisions of the Deed of Trust required collateral other than real property, which would remove the claim from 11 U.S.C. § 1322(b)(2)'s anti-modification protection. J.A. 397-99. Birmingham cited three specific provisions of the Deed of Trust, involving escrow items (Section Three), property insurance proceeds (Section Five), and miscellaneous proceeds (Section Eleven). J.A. 398. PNC filed a Motion to Dismiss the Adversary Complaint and an accompanying memorandum, contending that the items referred to in the Deed of Trust provisions cited by Birmingham constituted "incidental property," which is part of a debtor's principal residence. J.A. 674. Consequently, PNC argued that the additional items would not expose the PNC mortgage to a cram-down. J.A. 674.

4

After Birmingham filed a response to the motion to dismiss, Bankruptcy Judge Wendelin I. Lipp granted the motion, noting that "the issues raised by [Birmingham] were identical to arguments that repeatedly have been denied by the Bankruptcy Court for this District." J.A. 674.

Birmingham then appealed the Bankruptcy Court's decision to the United States District Court for the District of Maryland. J.A. 405. Birmingham raised the same arguments on appeal, namely that the inclusion of miscellaneous proceeds, escrow funds, and insurance proceeds in the Deed of Trust constitute a waiver of the anti-modification provision of 11 U.S.C. § 1322(b)(2). J.A. 422. The district court affirmed the bankruptcy court's decision, holding that the miscellaneous proceeds, escrow funds, and insurance proceeds provisions describe "benefits which are merely incidental to an interest in real property" and generally are not "additional security for purposes of § 1322(b)(2)." J.A. 679. The district court further noted that the items at issue do not "have any value of their own separate and apart from the Property and the [PNC Deed of Trust]; to the contrary, they all exist only to give effect to the PNC's security interest, which otherwise could be frustrated by a superior lien or by destruction or condemnation of the Property." J.A. 681.

5

Birmingham filed a timely appeal before this circuit. J.A. 685-88. This case was consolidated with a nearly identical case that similarly originated in the District Court of Maryland, Akwa v. Residential Credit Solutions, Inc., No. 14-cv-02703-GJH, 530 B.R. 309 (D. Md. 2015). The Akwa appeal was dismissed on February 16, 2016. ECF No. 69-2. Accordingly, only the Birmingham appeal is currently before the Court.

II.

This dispute requires us to determine whether the district court properly concluded that the bankruptcy court did not err in dismissing the adversary proceedings against PNC. Specifically, we are to analyze whether the district court correctly affirmed the bankruptcy court's finding that PNC is entitled to the anti-modification protections of 11 U.S.C. § 1322(b)(2).

Because the district court sits as an appellate tribunal in bankruptcy, our review of the district court's decision is plenary. Bowers v. Atlanta Motors Speedway (In re Se. Hotel Properties Ltd. P'ship), 99 F.3d 151, 154 (4th Cir. 1996) (citation omitted). "We apply the same standard of review as the district court applied to the bankruptcy court's decision." Id. "Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo." Id. (citation omitted).

6

The bankruptcy court granted PNC's motion to dismiss Birmingham's complaint under Federal Rule of Civil Procedure 12(b)(6).  J.A. 675.  The district court applied this same standard of review to the bankruptcy court's decision.  Id.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  Papasan v. Allain, 478 U.S. 265, 283 (1986).  The motion should be granted unless the complaint "states a plausible claim for relief."  Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  In considering a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the non-moving party's favor.  E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  The court is not obligated to assume the veracity of the legal conclusions drawn from the facts alleged.  Adcock v. Freightliner LLC, 550 F.3d 369, 374 (4th Cir. 2008) (citing Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085-86 (4th Cir. 1979)).

The complaint must contain sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable

7

to plausible." Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). The facial plausibility standard requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Clatterbuck v. City of Charlottesville, 708 F.3d 549, 554 (4th Cir. 2013) (quoting Iqbal, 556 U.S. at 678). The plausibility requirement imposes not a probability requirement but rather a mandate that a plaintiff "demonstrate more than a 'sheer possibility that a defendant has acted unlawfully.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." Id. (citations omitted). The complaint must present "'enough facts to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity." US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 556).

In addition to the complaint, the court will also examine "documents incorporated into the complaint by reference," as well as those matters properly subject to judicial notice. Clatterbuck, 708 F.3d at 557 (citations omitted); see also Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d

8

172, 176 (4th Cir. 2009) (quoting <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)).

B.

Certain provisions of the Bankruptcy Code are relevant to this appeal. "Under Chapter 13 of the Bankruptcy Code, individual debtors may obtain adjustment of their indebtedness through a flexible repayment plan approved by a bankruptcy court." <u>Nobelman v. Am. Sav. Bank</u>, 508 U.S. 324, 327 (1993). The relationship between 11 U.S.C. § 506(a) and § 1322(b)(2) is pertinent to this circuit's review of the district court's decision to affirm the bankruptcy court's dismissal of Birmingham's complaint. Section 506(a) is used in conjunction with § 1322 to allow modification, or bifurcation, of a secured creditor's claim into secured and unsecured portions when the claim exceeds the value of the secured property. <u>Nobelman</u>, 508 U.S. at 328.

In <u>Nobelman</u>, the Supreme Court examined the nexus between claim-bifurcation under § 506(a) and the anti-modification provision of § 1322(b)(2) to ascertain whether a debtor could bifurcate a single, under-secured residential mortgage claim into secured and unsecured components pursuant to § 506(a). <u>Id.</u> at 326. The debtor in <u>Nobelman</u> argued that § 1322(b)(2)'s anti-modification provision applied only to the secured component of her mortgage claim, as defined in § 506(a). <u>Id.</u>

9

Section 506(a) states that:

> (a)(1) An allowed claim of creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). Accordingly, under § 506(a), "an allowed claim secured by a lien on the debtor's property is a secured claim to the extent of the value of the property; to the extent the claim exceeds the value of the property, it is an unsecured claim." Nobelman, 508 U.S. at 328 (internal quotation marks omitted).

Notwithstanding, § 1322(b)(2) provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> . . .
>
> Modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .

11 U.S.C. § 1322(b)(2). This "anti-modification" provision precludes reduction or cramming down the value of a claim secured by an interest in real property that is the debtor's principal residence. In other words, a claimant's interest in

10

real property that is secured solely by the debtor's principal residence may not be bifurcated.

## C.

Congress clarified the meaning of a key term in the anti-modification clause, "debtor's principal residence," in the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCP Act") of 2005. The Bankruptcy Code now defines the term as "a residential structure if used as the principal residence by the debtor, including *incidental property*, without regard to whether that structure is attached to real property." 11 U.S.C. § 101(13A)(A)(emphasis added). The BAPCP Act also defined "incidental property," as it relates to a debtor's principal residence, as follows:

> (A) property commonly conveyed with a principal residence in the area where the real property is located;

> (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds;

> (C) all replacements or additions.

11 U.S.C. § 101(27B). The Code defines a security interest as a "lien created by an agreement." 11 U.S.C. § 101(51). Moreover, a lien is defined as a "charge against or interest in property to secure a payment of a debt or performance of an obligation." 11 U.S.C. § 101(37).

11

With this framework in mind, and for the reasons that follow, we hold that the district court's decision to affirm the bankruptcy court's dismissal of Birmingham's complaint was correct. PNC's loan was secured solely by Birmingham's principal residence and not any additional collateral. The Bankruptcy Code's anti-modification provision precluded the bifurcation sought by Birmingham. Consequently, Birmingham's complaint was appropriately dismissed.

## III.

The Birmingham Deed of Trust not only grants PNC a security interest in the Property, but also provides additional protections for PNC. However, saliently, the auxiliary protections are not additional collateral and do not remove PNC's claim from the protection of § 1322(b)(2).

## A.

Of particular importance to this Court's analysis are Sections 3, 5, and 11 of the Deed of Trust, all of which will be analyzed in turn. Section 3 of the Deed of Trust pertains to escrow funds and states, in pertinent part, the following:

> Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground

12

rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of the Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."

. . .

If there is a surplus of Funds held in escrow, as defined under [the Real Estate Settlement Procedures Act ("RESPA")], Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is shortage of funds held in escrow, as defined under RESPA, Lender shall notify Borrower as requested by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.

Deed of Trust § 3, J.A. 621-22.

Section 5 of the Deed of Trust addresses the topic of property insurance, and provides as follows:

Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "Extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance . . . .

If Borrower fails to maintain any of the coverage described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.

. . . .

Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to

13

exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Deed of Trust § 5, J.A. 623-24.

Lastly, Section 11 of the Deed of Trust discusses miscellaneous proceeds and contains the following language:

Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

. . . .

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless the Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Securing Instrument whether or not the sums are then due.

Deed of Trust § 11, J.A. 626.

Miscellaneous Proceeds include:

[A]ny compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omission as to, the value and/or condition of the Property.

14

Deed of Trust ¶ M.

The issue presented is whether these provisions of the Deed of Trust constitute sufficient collateral so that PNC's interest is secured by more than Birmingham's principal residence. We hold that the aforementioned provisions do not entitle Birmingham to the bifurcation sought.

B.

Birmingham argues that Sections 3, 5, and 11 of the Deed of Trust provide additional security for PNC's interest such that it is no longer secured solely by an interest in real property. Appellant Br. at 19-25. These items, however, are incidental property frequently conveyed in a deed of trust and defined in 11 U.S.C. §§ 101(27B) and 101(13A)(A) as part of a debtor's principal residence.

The case Allied Credit Corp. v. Davis (In re Davis), 989 F.2d 208 (6th Cir. 1993) is illustrative. There, the Sixth Circuit found that "[i]tems which are inextricably bound to the real property itself as part of the possessory bundle of rights" do not extend a lender's security beyond the real property. Id. at 213; see also Akwa, 530 B.R. at 313 (D. Md. 2015). On the topic of insurance, the Davis court explained that "hazard insurance is merely a contingent interest — an interest that is irrelevant until the occurrence of some triggering event and *not an additional security interest for the purposes of §*

15

*1322(b)(2)."* In re Davis, 989 F.2d at 211 (citation omitted) (emphasis added). This reasoning similarly applies to miscellaneous proceeds and escrow funds that are tied to the real property at issue. See In re Ferandos, 402 F.3d 147, 156 (3d Cir. 2005) ("[F]unds for taxes and insurance, paid over and placed in escrow, exist precisely for the purpose of paying said taxes and insurance — a cost incurred by the debtor in connection with the ownership of real property."); see also Kreitzer v. Household Realty Corp. (In re Kreitzer), 489 B.R. 698, 703-06 (Bankr. S.D. Ohio 2013) (holding that a security interest which residential mortgage lender took in miscellaneous proceeds was not an additional security interest that the lender possessed other than in the residential mortgage property itself).

The district court in Akwa, which involved the same standard Fannie Mae/Freddie Mac deed of trust that is at issue in this appeal, correctly noted:

> [T]he lender may collect funds for escrow to ensure that all property-related payments, like taxes and ground rents, are paid. Likewise, the Deed of Trust also permits the lender to hold insurance proceeds if an insurer pays for repairs to the house to ensure that the lender's investment — the real property — is repaired to lender's satisfaction. The same is true for miscellaneous proceeds paid by a third party, which the lender can use for repairs or restoration.

Akwa, 530 B.R. at 313-14.

16

PNC accurately states that this perspective has been recognized by a number of courts in analogous circumstances. See Abdosh v. Ocwen Loan Servicing (In re Abdosh), 513 B.R. 882, 886 (Bankr. D. Md. 2014), aff'd sub nom. Abdosh v. Ocwen Loan Servicing, LLC, No. CIV. PJM 14-2916, 2015 WL 4635103 (D. Md. July 30, 2015) (noting that "[t]here is no need to re-visit in detail this clear legal issue"); In re Kreitzer, 489 B.R. at 703-06 (discussing miscellaneous proceeds); In re Mullins, No. 11-11176C-13G, 2012 WL 2576625, at *2 (Bankr. M.D.N.C. July 3, 2012) (discussing escrow funds); In re Inglis, 481 B.R. 480, 482-83 (Bankr. S.D. Ind. 2012) ("[U]nder the express terms of these provisions . . . a lender does not lose its § 1322(b)(2) protection by taking a security interest in escrow funds as 'escrow funds' are part of the 'incidental property' which comprise 'the debtor's principal residence.'"); In re Leiferman, No. BR 10-40718, 2011 WL 166170, at *2 (Bankr. D.S.D. Jan 19, 2011) (analyzing miscellaneous proceeds).

In his opposition, Birmingham cites a series of cases where courts have held that certain additional collateral existed beyond real property. For instance, Birmingham cites the Third Circuit's decision Hammond v. Commonwealth Mortg. Corp. of Am., 27 F.3d 52 (3d Cir. 1994) for the proposition that "supplemental collateral in a deed of trust will cause a waiver of the anti-modification rights of 11 U.S.C. § 1322(b)." Appellant Br. at

17

43-44.  However, the lien in Hammond explicitly "covered more than the real property."  See Abdosh, 513 B.R. at 886.

The security contrivance in Hammond created "an additional security interest in: any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever."  Hammond, 27 F.3d at 53-54 (internal quotation marks omitted).  Here, the Deed of Trust does not expressly attempt to take a security interest in additional collateral.  As the Akwa court concluded, the language found in these provisions "explicitly ties the funds to ensuring that the lender's collateral — the real property — is preserved."  Akwa, 530 B.R. at 313.  Accordingly, Birmingham's reliance on Hammond is misplaced.

Relatedly, Birmingham's arguments premised on the holdings of other cases cited in his brief are inapposite for the same reason: the security instruments at issue explicitly granted the debtee an interest secured by more than just real property.  For example, In re Ennis – in which we found the anti-modification clause of § 1322(b)(2) inapplicable to a security agreement for personal property, i.e. a mobile home on leased property – provides no guidance for a home mortgage that includes the typical incidental benefits intended to protect the interest in real property.  See Ennis v. Green Tree Servicing, LLC (In re Ennis), 558 F.3d 343, 347 (4th Cir. 2009); see also Scarborough

18

v. Chase Manhattan Mortg. Corp. (In re Scarborough), 461 F.3d 406, 412 (3d Cir. 2006) (holding that when a mortgage lender takes an interest in real property that includes income producing property, the lender's interest is also secured by property that is not the debtor's principal residence, and its claim may be modified); Lomas Mortg., Inc. v. Louis, 82 F.3d 1, 7 (1st Cir. 1996) (finding that § 1322(b)(2) does not bar modification of a secured claim on a multi-unit property in which one unit is debtor's principal residence and the security interest extends to other income-producing units); Sapos v. Provident Inst. of Sav. in Town of Boston, 967 F.2d 918, 921 (3d Cir. 1992) (holding that the anti-modification provision is inapplicable where the note was also secured by wall-to-wall carpeting, rents, and profits), overruled on other grounds by Nobelman v. Am. Sav. Bank, 508 U.S. 324 (1993); Wilson v. Commonwealth Mortg. Corp., 895 F.2d 123, 128 (3d Cir. 1990) (finding § 1322(b)(2) not applicable where a mortgage agreement stated that the lender had "a security interest in appliances, machinery, furniture, and equipment"), abrogated on other grounds by Nobelman, 508 U.S. 324.

Sections 3, 5, and 11 of the Deed of Trust do not create ''separate or additional security interest[s], but [are] merely [] provision[s] to protect the lender's security interest in the real property.'' Akwa, 530 B.R. at 314 (quoting In re Kreitzer,

19

489 B.R. 698, 705-06). Accordingly, the district court properly found, as a matter of law, that escrow funds, insurance proceeds, and miscellaneous proceeds are incidental property that do not constitute separate security interests.

C.

Birmingham additionally relies on a line of cases from North Carolina bankruptcy courts that ostensibly found "where an assignment of alternative collateral exists in a deed of trust other than real property, the lender will be subject to modification of its secured debt." Appellant Br. at 26 (citing In re Bradsher, 427 B.R. 386 (Bankr. M.D.N.C. 2010); Bradshaw v. Asset Ventures, LLC (In re Bradshaw), Nos. 13-06176-8-RDD, 14-00023-8-RDD, 2014 WL 2532227 (Bankr. E.D.N.C. June 4, 2014); In re Murray, No. 10-10125-8-JRL, 2011 WL 5909638 (Bankr. E.D.N.C. May 31, 2011); In re Martin, 444 B.R. 538 (Bankr. M.D.N.C. 2011); In re Hughes, 333 B.R. 360 (Bankr. M.D.N.C. 2005)). As the district court in this case correctly stated, however, the loan documents in both Bradsher and Hughes "expressly provided that escrow payments constituted additional security for the loan." J.A. 680 (citing Bradsher, 427 B.R. at 388-89 ("[T]he loan documents purport to provide a security interest for the indebtedness secured by the deed of trust in escrow funds in addition to a security interest in the residential land and housing structure."); Hughes, 333 B.R. at 363 (noting that the

20

loan documents "require the borrower to pledge the escrow funds as 'additional security'")). Hence, the language of the loan documents in both Bradsher and Hughes is unequivocally distinguishable from the language present in the Birmingham Deed of Trust. The holdings of Bradsher and Hughes therefore do not apply to this case.

Moreover, in Mullins, the same judge who presided over Bradsher held that nothing in the deed of trust "suggests that a security interest is also being granted in escrow funds. Nor is there any language in the escrow provisions [] purporting to create a security interest in escrow funds to be paid by the [debtors]." In re Mullins, 2012 WL 2576625 at *2. Further, in Bynum v. CitiMortgage, Inc. (In re Bynum), Nos. 12-10660, 12-2031, 2012 WL 2974694 (Bankr. M.D.N.C. July 19, 2012), the bankruptcy judge found that a standard Fannie Mae/Freddie Mac deed of trust "do[es] not contain elements required to create a security interest in Escrow Funds." Id. at *3.

To the extent that Birmingham also relies upon In re Daniels, No. 15-666-5-SWH, 2015 WL 9283153 (Bankr. E.D.N.C. Dec. 18, 2015), a case that addresses the district court decision that is currently before us, the Court in Daniels stated that "Birmingham involved a deed of trust that did not contain explicit language creating a security interest in escrow funds." Id. at *3 (citation omitted). Highlighting this difference, the

21

Court in Daniels found that "Birmingham's rejection of Bradsher and Murray is not instructive." Id.

In short, the North Carolina bankruptcy courts agree that the anti-modification clause applies to the Fannie Mae/Freddie Mac Deed of Trust before us in this case. We thus have no occasion to consider the effect – if any – of additional language in a deed purporting to create a separate security interest in escrow funds, insurance proceeds, or miscellaneous proceeds, in light of our interpretation of § 1322(b)(2).

D.

Birmingham also argues that both the bankruptcy court and the district court should have looked to Maryland law to determine whether the Deed of Trust created additional security interests in escrow funds, insurance proceeds, and miscellaneous proceeds as "real property." Appellant Br. at 21-24. The Bankruptcy Code, however, explicitly defines "incidental property" to a debtor's principal residence, which includes both escrow funds and insurance proceeds. 11 U.S.C. § 101(27B). State laws are suspended if they conflict with the Bankruptcy laws. Butner v. U.S., 440 U.S. 48, 54 n.9 (1979). Thus, it is not necessary for us to examine Maryland law on this issue.

Even if Maryland law were to apply, it is far from clear that the resulting holding would be favorable for Birmingham. A security interest is created, under Maryland law, when there is

22

language present in the security instrument that leads to the logical conclusion that it was the intention of the parties to create a security interest. Tilghman Hardware, Inc. v. Larrimore, 628 A.2d 215, 220 (Md. 1993) (citation omitted). We have already found that the Deed of Trust did not contain language wherein a security interest was granted in escrow funds, insurance proceeds, or miscellaneous proceeds. Therefore, Birmingham's argument with respect to the application of Maryland law is unavailing.

Finally, the policy arguments that Birmingham puts forth are similarly ineffective. Birmingham asks this circuit to ignore various cases that characterize escrow funds, insurance proceeds, and miscellaneous proceeds as "part and parcel" of real property. Appellant Br. at 44 (citing In re Kreitzer, 489 B.R. at 704; In re Ferandos, 402 F.3d at 151; Davis, 989 F.2d at 211; In re Rosen, 208 B.R. 345, 354 (D.N.J. 1997)). Additionally, Birmingham relies on In re Escue, 184 B.R. 287 (Bankr. M.D. Tenn. 1995) to contend that the bankruptcy court erred by not finding that the pertinent incidental items at issue constitute supplemental collateral, in light of the legislative history of the Bankruptcy Code. Appellant Br. at 48-49. The Escue decision came before §§ 101(13A)(A) and (27B) were enacted, however. Furthermore, as with many of the other cases that Birmingham has cited, the deed of trust at issue in

23

Escue expressly created a security interest in certain fixtures with granting language that is wholly absent from the Birmingham Deed of Trust. Consequently, Birmingham's reliance on Escue is misplaced.

Characterizing escrow funds, insurance proceeds, and miscellaneous proceeds as additional security for § 1322(b)(2) "would completely eviscerate the anti-modification exception of § 1322(b)(2) because many deeds of trust which encumber improved real property contain these provisions to protect the lender's investment in the real property." Akwa, 530 B.R. at 313 (internal quotation marks omitted). Moreover, as the district court noted, Congress did not intend for Birmingham's position and "this principle cannot be squared with an interpretation that would render the anti-modification provision inapplicable to virtually all residential mortgages." J.A. 682.

## IV.

The Deed of Trust on Birmingham's residence is secured only by real property that is also Birmingham's principal residence. Escrow funds, insurance proceeds, and miscellaneous proceeds do not constitute additional collateral. Accordingly, Birmingham's complaint fails to state a claim for relief that is plausible. For the foregoing reasons, the district court's judgment is affirmed.

AFFIRMED

24